**BANKAMERICA PENSION PLAN, an employee benefit plan; BankAmerica 401(K) Investment Plan, an Employee Benefit Plan, Plaintiffs,**

v.

**Alexander S. McMATH, an individual, Defendant–Appellee,**

v.

**Alva M. Montgomery, an individual; Patsy Patterson, an individual; and The Estate of Clarence C. Montgomery, Defendants–Appellants.**

No. 98–16543.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 9, 1999

Filed March 13, 2000

Douglas A. Applegate, Seiler Epstein & Applegate, San Francisco, California, for the defendants-appellants.

John F. Henning, San Francisco, California, for the defendant-appellee.

Before: SNEED, PREGERSON, and W. FLETCHER, Circuit Judges.

Opinion by Judge Sneed; Concurrence by Judge Sneed.

SNEED, Circuit Judge:

This case arises from an interpleader action brought by the BankAmerica 401(k) Plan ("401(k) Plan") and the BankAmerica Pension Plan ("Pension Plan," collectively, the "Plans") to resolve the proper beneficiaries of the benefits under the Plans. Defendants in the interpleader action, Alva M. Montgomery and Patsy Patterson (collectively, "Appellants"), appeal the summary judgment of the United States District Court for the Northern District of California, in favor of the co-defendant Alexander S. McMath ("Mr. McMath"). Appellants argue that summary judgment was improper against them because there were genuine issues of material fact and because the district court applied the incorrect law. We agree that the district court did err in that it should have applied California law rather than federal common law. Under California law, Mr. Montgomery did not substantially comply with the 401(k) Plan's beneficiary designation requirements. We therefore reverse the decision of the district court.

I.

## BACKGROUND

Clarence C. Montgomery ("Mr. Montgomery") worked at Bank of America from approximately 1990 until his death in November 1996. This present dispute is over the proceeds to the 401(k) Plan that Mr. Montgomery accumulated while working for Bank of America.[1] In 1990, Mr. Mont-

---

1. We note that the Pension Plan is also a named party to the suit. In as much as the beneficiary designation form for the Pension Plan was also unsigned it is similar to the 401(k) Plan. However, neither party raised the issue of the validity of the beneficiary designation form for the Pension Plan in this appeal. We therefore leave the disposition of this matter to the discretion of the district court on remand.

gomery submitted a beneficiary designation form for the 401(k) Plan designating three primary beneficiaries: Alva Montgomery (his mother), Clarence H. Montgomery (his father), and Patsy Patterson (his sister). In March 1996, an *unsigned* beneficiary form was submitted for the 401(k) Plan, naming Mr. McMath as the primary beneficiary and Alva Montgomery as the contingent beneficiary. The 401(k) Plan accepted the form but failed to notice that it had not been signed.

After Mr. Montgomery's death in 1996, the 401(k) Plan realized the omission and informed both Mr. McMath and Appellants. Mr. McMath and Appellants subsequently attempted but were unable to reach an agreement on a division of the proceeds of the 401(k) Plan. In March 1997, both asserted claims to the 401(k) Plan. In April 1997, the 401(k) Plan claims administrator determined that the *unsigned* beneficiary form was valid, and that Mr. McMath was entitled to the 401(k) Plan benefit. Appellants appealed pursuant to the 401(k) Plan appeal procedures and in August 1997, the 401(k) Plan's Administrative Committee upheld the decision of the claim's administrator and denied the appeal.

The Plans filed an interpleader action under the Employee Retirement Income Security Act of 1974 (ERISA) and Federal Rule of Civil Procedure 22 to resolve the parties's respective positions in the dispute. In February 1998, the district court discharged the Plans from the action and released them from all liability to the claimants. Thereafter, Mr. McMath and Appellants filed cross motions for summary judgment and on July 22, 1998, the district court found that there were no genuine issues of material fact and ruled in favor of Mr. McMath.

The district court's ruling was based on the following findings: (1) Mr. Montgomery contacted the plan and requested the change of beneficiary form; (2) Mr. Montgomery then filled out the form and returned it, neglecting only to sign it; (3)

Mr. Montgomery was deprived of the opportunity to sign the form because the plan's Service Center failed to return it to him for completion, in contravention of its standard policy to do so upon the receipt of unsigned forms; instead, (4) the Service Center filed the unsigned form as an effective change of beneficiary; and (5) the 401(k) Plan's fiduciary had discretion to determine eligibility for benefits and it exercised its discretion reasonably. In determining that the fiduciary had not abused its discretion, the district court found that: (1) ERISA preempted the state doctrine of substantial compliance; (2) a federal common law doctrine of substantial compliance applied; and (3) under the federal common law doctrine of substantial compliance Mr. Montgomery effectively designated Mr. McMath as his beneficiary.

We reverse and remand for further proceedings in accordance with this opinion.

## II.

### *JURISDICTION*

The district court had jurisdiction of this interpleader complaint under section 502 of the ERISA. *See* 29 U.S.C. § 1132. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## III.

### *DISCUSSION*

### A. STANDARD OF REVIEW

We review a grant of summary judgment de novo. *See Balint v. Carson City,* 180 F.3d 1047, 1050 (9th Cir.1999) (en banc). In doing so, we "must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.*

## B. GENUINE ISSUES OF MATERIAL FACT

Viewing the evidence in the light most favorable to the nonmoving party, we must determine, first, whether there are any genuine issues of material fact. Appellants have raised three factual issues at various times during these proceedings: they contend (1) that Mr. Montgomery did not complete the form (i.e., the portion of the form that was filled out was not in Mr. Montgomery's handwriting); (2) that Mr. Montgomery did not submit the form (i.e., even if he did fill out the form it was not he who mailed it to the Bank of America); and, alternatively, (3) that Mr. Montgomery completed and submitted the form to appease Mr. McMath but *intentionally* omitted his signature from the form because he did not intend to accomplish the change in beneficiary. We address each contention in turn.

### 1. *Did Mr. Montgomery Complete the Form?*

■ Appellants dispute the identity of the person who completed the unsigned beneficiary form. They argue that the handwriting is not Mr. Montgomery's and suggest that it is instead Mr. McMath's.[2] However, Appellants never raised this issue at the district court level. Further, the parties agreed in the Joint Case Management Statement that:

> Most facts are not in dispute. Defendants Alva Montgomery and Patsy Patterson dispute whether the deceased *submitted* the unsigned beneficiary forms. Defendants Alva Montgomery and Patsy Patterson also dispute whether the deceased had the capacity or intent to make beneficiary designation changes.

(emphasis added). Moreover, Appellants asserted in their Opening Brief that the *only* factual issue in dispute was who *submitted* the form. Only in their reply brief

do they attempt to introduce doubt as to who *completed* the form. Finally, the district court specifically asked counsel during the summary judgment hearing if there was a genuine issue as to who completed the form and counsel said there was not:

> **Judge:** So I'm looking upon that and I'm accepting the fact that that is actually in Mr. Montgomery's handwriting. I think now is the time to come in with some evidence to the contrary, and I don't see any evidence to the contrary.
>
> So, you're not suggesting, are you, that the genuine issue of material fact is whether or not [the form] is in Mr. Montgomery's handwriting?
>
> **Counsel:** That would be correct. . . .
>
> * * *
>
> **Counsel:** We have a form that was pre-printed. *We have a form that he filled out.* We have a form that requires that he sign and date the form. But it was not signed or dated.

(Transcript of Summary Judgment Hearing at 12, 21, Clerks Record Folder 2) (emphasis added).

■ The parties cannot raise new issues on appeal to secure a reversal of the lower court's summary judgment determination. *See USA Petroleum Co. v. Atlantic Richfield Co.*, 13 F.3d 1276, 1284 (9th Cir.1994) (citations omitted). We therefore find that Appellants have waived the issue of whether or not Mr. Montgomery completed the form.

### 2. *Did Mr. Montgomery Return the Form to Bank of America?*

■ Appellants argue that there is a factual dispute about who submitted the unsigned, undated beneficiary designation

---

**2.** "Without further exemplars of Mr. Montgomery's handwriting, as well as Mr. McMath's handwriting, no definitive conclu-

sions can be drawn about who completed the undated and unsigned form."

form to Bank of America listing Mr. McMath as Mr. Montgomery's primary beneficiary. Appellants argue that the absence of any evidence on this issue indicates that it was *not* Mr. Montgomery who returned the unsigned and undated form.

■ However, "it is a general rule that a party cannot revisit theories that it raises but abandons at summary judgment." *USA Petroleum*, 13 F.3d at 1284. While it is true that Appellants initially raised the issue of who submitted the form in the district court, they effectively abandoned it at summary judgment. The district court judge asked at least five times during the summary judgment hearing what the genuine issues of material fact were. Appellants failed to raise the issue when given the opportunity and in fact conceded it. Appellants instead pursued the theory that Mr. Montgomery submitted the form but intentionally did not sign the form:

**Counsel:** I think the fact that Mr. Alexander (sic) read the form and prepared some of it but didn't sign it is—it's pretty significant, I think, to show that maybe his intent wasn't to make an actual change. Maybe there was some sort of discussion with Mr. McMath that he wanted to do the change. Maybe he didn't want to. Maybe this was a way that he would placate Mr. McMath's feelings.

**Judge:** But he sent it back. Couldn't I infer that he sent it back?

I mean, let's say he simply wanted to placate. And I don't want to get into the realm of speculation, but we don't have to speculate the fact that it was received by the Bank of America.

**Counsel:** But if he knew that he had to properly authorize the change of beneficiary, which is what the form instructs him to do, he knows that by sending it in, it doesn't matter. It's not a valid form in which he has

designated his family, and by doing it this way, you know, he appeases.

(Transcript of Summary Judgment Hearing at 14, Clerk's Record Folder 2).

■ A party abandons an issue when it has a full and fair opportunity to ventilate its views with respect to an issue and instead chooses a position that removes the issue from the case. *See USA Petroleum*, 13 F.3d at 1282. It is immaterial whether the issue was not addressed in the district court because it was not raised, or because it was raised but conceded by the party seeking to revive it on appeal. *See id.* at 1284. We therefore find that Appellants abandoned the argument that someone other than Mr. Montgomery submitted the form and will not reach it on appeal.

### 3. *Did Mr. Montgomery Intentionally Omit His Signature From the Form?*

In the district court, Appellants argued that Mr. Montgomery completed and submitted the form to appease Mr. McMath but *intentionally* omitted his signature from the form because he did not intend to accomplish the change in beneficiary. However, Appellants did not raise this issue on appeal and we therefore do not consider it.

### 4. *Was There Adequate Opportunity for Discovery?*

■ Finally, Appellants assert that they could not argue or present any evidence to show that it was not Mr. Montgomery who completed or submitted the unsigned and undated form because they did not have an opportunity for discovery. This contention is wholly without merit. The parties agreed to a discovery schedule in December 1997 that allowed for discovery through written requests for documents and discovery subpoenas. The summary judgment hearing was six months later, in June 1998. At that hearing, the district court judge flatly rejected Appellants's

contention and noted: "If you felt that some discovery was necessary for you to respond to their motion for summary judgment you could have asked for it. You didn't make any such request." We agree with the district court that the Appellant had an opportunity for discovery.

### 5. *Conclusion*

Because Appellants either abandoned or failed to dispute the possible factual issues we find that the district court did not err in holding that there was no genuine issue of material fact that would require a trial. Accordingly, we accept as true that Mr. Montgomery completed and submitted the beneficiary designation form.

## C. APPLICATION OF THE RELEVANT SUBSTANTIVE LAW

### 1. *Overview*

We now review the Administrative Committee's decision to award benefits to one claimant and deny benefits to the competing claimants. Initially we must determine what discretion, if any, should be accorded the decision of the Administrative Committee. We will review its decision for an abuse of discretion if the 401(k) Plan gives the Administrative Committee "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Nelson v. EG & G Energy Measurements Group, Inc.,* 37 F.3d 1384, 1388 (9th Cir.1994). However, should we determine that the Administrative Committee did not have such discretion under 401(k) Plan then we will determine, de novo, the proper beneficiary. *See Firestone,* 489 U.S. at 115, 109 S.Ct. 948.

In making a de novo determination, we apply the equitable doctrine of substantial compliance to determine whether Mr. Montgomery's attempt to change the beneficiary, although less than what the 401(k) Plan strictly required, was sufficient to effect the change.

### 2. *Scope of Administrative Committee's Discretion*

■ The 401(k) Plan states that the "Administrative Committee shall have discretionary authority to determine eligibility for benefits and to construe the terms of the Plan." Article 10.3(a) of the 401(k) Plan. The district court found that the 401(k) Plan directly granted the Administrative Committee discretion in determining the eligibility of beneficiaries. In fact, however, the Administrative Committee was not given the discretion to waive the signature requirement.

The 401(k) Plan clearly provides that a beneficiary designation *"shall* be made by submitting a Beneficiary designation to the Service Center" and "the Participant *shall* take such action by completing *and signing* the form prescribed by the Administrative Committee for that purpose and filing such form with the Service Center." Article 7.2(b) of the 401(k) Plan (emphasis added). The 401(k) Plan further provides that "[n]either the Committees nor any of their members shall have the power to add to, *subtract from or modify* any of the terms of the Plan or Trust Agreement, to change any benefits otherwise than as provided by the Plan, or to waive or fail to apply any eligibility requirements for benefits under this Plan." Article 10.7 of the 401(k) Plan (emphasis added). The Administrative Committee thus did not have the discretion to "subtract from or modify" the terms of the 401(k) Plan. More specifically, it did not have the discretion to "subtract from or modify" the requirement that a Beneficiary Designation Form be signed.

This conclusion does not render the grant of discretionary authority meaningless. For example, the Administrative Committee had the discretion to determine eligibility for benefits under Article II of the 401(k) Plan (Eligibility to Participate). The Administrative Committee had other discretionary authority as well, including, *inter alia,* discretion to adopt rules as it

deems appropriate (provided they are systematically followed and consistently applied). Article 10.3(a)(3), 10.5 of the 401(k) Plan.

■ The conclusion that the Administrative Committee was not given discretion to determine whether the beneficiary designation requirements were met does not end our inquiry. Courts have discretion to employ the equitable doctrine of substantial compliance, which is intended to circumvent harsh results "engendered by a formalistic, overly technical adherence to the exact words of the change of beneficiary provision in a given policy." *Phoenix Mutual Life Insurance Co. v. Adams*, 30 F.3d 554, 563 (4th Cir.1994). This doctrine necessarily allows less than strict compliance with the terms of the plan. Nonetheless, the compliance must be substantial. Accordingly, we must determine whether Mr. Montgomery's compliance was substantial enough to save his defective beneficiary designation.

### 3. *Substantial Compliance Doctrine*

The first step in this inquiry is to determine whether federal or state law applies. The Plans are ERISA plans and are governed by ERISA. However, no ERISA provision expressly governs disputes between claimants to plan proceeds. *See Emard v. Hughes Aircraft Co.*, 153 F.3d 949, 957 (9th Cir.1998).

In the absence of federal law we are ordinarily required to apply the law of the forum state. *See Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). However, ERISA preempts "any and all State laws insofar as they ... relate to any employee benefit plan." 29 U.S.C. § 1144(a). Therefore, we must determine whether ERISA preempts California's doctrine of substantial compliance.

### a. *Preemption*

■ The district court held that ERISA preempted any state law doctrine of substantial compliance. We "review de novo the district court's interpretation and application of ERISA provisions and its determination that ERISA preempts state law." *Hughes Aircraft*, 153 F.3d at 952.

ERISA is a comprehensive statutory scheme designed to govern employee benefit plans, which provides that it "shall supersede any and all State laws insofar as they ... relate to any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a). Whether ERISA preempts a state substantial compliance doctrine is a question of first impression in this circuit; however, the Fourth and Tenth Circuits have addressed the issue.

The Tenth Circuit found that:

ERISA is concerned with state law doctrines that serve to modify a plan because such doctrines could destabilize the plan as well as subject it to conflicting state regulation. However, these concerns apply only where the potential modification is material. By definition, the doctrine of substantial compliance does not materially modify a plan, but rather is simply a doctrine to assist the court in determining whether conduct should, in reality, be considered the equivalent of compliance under the contract.

*Peckham v. Gem State Mutual of Utah*, 964 F.2d 1043, 1051 (10th Cir.1992).

The Fourth Circuit, while agreeing that the doctrine of substantial compliance does not materially modify a plan, rejected the Tenth Circuit's preemption analysis and found instead that "the test of ERISA preemption 'is not whether a state law modifies a plan, but whether a state law "relates to" a plan.'" *Phoenix Mutual*, 30 F.3d 554, 559 (4th Cir.1994). The Fourth Circuit also criticized the Tenth Circuit's holding in *Peckham* as "unduly restrictive in light of the Supreme Court's language in *Pilot Life*." *Phoenix Mutual* at 560.

■ The Supreme Court in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44–45, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), interpreted ERISA's preemption statute as cre-

ating a deliberately expansive preemption of state law. *See Hughes Aircraft*, 153 F.3d at 953. However, the Supreme Court has retreated from the "deliberately expansive" preemption language of *Pilot Life*. It recognizes that the ERISA preemption must have limits when it enters areas traditionally left to state regulation. Thus, the current ERISA preemption analysis provides that a law "relates to" an employee benefit plan if it has (1) a "reference to" or (2) a "connection with" an ERISA plan. *See California Div. of Labor Standards Enforcement v. Dillingham Constr. N.A., Inc.*, 519 U.S. 316, 324, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997); *Hughes Aircraft*, 153 F.3d at 954.

### b. Application of Dillingham Constr. N.A., Inc.

Under *Dillingham*, a state law has "reference to" ERISA plans where it "acts immediately and exclusively upon ERISA plans, . . . or where the existence of ERISA plans is essential to the law's operation." 519 U.S. at 325, 117 S.Ct. 832. California's doctrine of substantial compliance plainly does not act immediately and exclusively upon ERISA plans, nor is the existence of ERISA plans essential to the doctrine's operation. The issue is whether the doctrine has a "connection with" ERISA benefit plans.

To determine the existence of a forbidden connection, we "must go beyond the unhelpful text and the frustrating difficulty of defining its key term ['relate to'], and look instead to both the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive," and "the nature of the effect of the state law on ERISA plans." *Id.* (citation omitted). This approach closely resembles the approach taken in *Peckham*, 964 F.2d at 1052, where the court looked to the ERISA statute and found that the doctrine of substantial compliance did not frustrate any of its objectives. Therefore, we find this approach persuasive.

Our decision in *Hughes Aircraft*, 153 F.3d at 959, held that state community property law was not preempted even though it would require the distribution of ERISA proceeds to a person other than the designated beneficiary. *See id.* We drew a distinction between laws that affected the administration of the plans and those that merely affected the ultimate ownership of the distributed benefits. *See id.* The court noted that "[i]f a contending claim [for the benefits] is made before disbursement, the administrator can leave the determination of the proper recipient of the proceeds to the parties through the application of state property law." *Id.* The court looked to the effect of the state law on the administration of the plan and found that the burdens on the administrator were too slight to overcome the presumption against preemption. *See Hughes Aircraft*, 153 F.3d at 959.

The present case is similar. We hold that in this case the state law doctrine of substantial compliance would not affect the administration of the plan. Rather, it would aid in determining the identity of the proper recipient of the proceeds. As with the application of state community property law in *Hughes Aircraft*, the burden on the administrator resulting from applying state substantial compliance law would be slight and is not enough to overcome the presumption against preemption.

This court has reviewed the relationship between an ERISA benefit plan and state law in several contexts. These include: "(1) whether the state law regulates the types of benefits of ERISA employee welfare benefit plans; (2) whether the state law requires the establishment of a separate employee benefit plan to comply with the law; (3) whether the state law imposes reporting, disclosure, funding, or vesting requirements for ERISA plans; and (4) whether the state law regulates certain ERISA relationships, including the relationships between an ERISA plan and employer and, to the extent an employee benefit plan is involved, between the em-

ployer and employee." *Operating Engineers Health and Welfare Trust Fund v. JWJ Contracting Co.*, 135 F.3d 671, 678 (9th Cir.1998) (citing *Aloha Airlines v. Ahue*, 12 F.3d 1498, 1504 (9th Cir.1993)).

The first three *Aloha* factors are not at issue. The doctrine of substantial compliance does not regulate the *types of benefits* of ERISA plans; does not require *the establishment of a separate employee benefit plan;* and does not *impose reporting, disclosure, funding or vesting requirements.* However, as previously discussed, the doctrine of substantial compliance on the facts of this case affects only the ultimate ownership of the benefits. This connection with ERISA is too "tenuous, remote, or peripheral" to trigger preemption. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

For the foregoing reasons, we hold that ERISA does not preempt the application of California's doctrine of substantial compliance. Accordingly, there is no need for a federal common law substantial compliance doctrine that would fill the vacuum. We turn now to the application of California's doctrine of substantial compliance to the facts of this case.

### c. Substantial Compliance under California Law

 The Supreme Court of California has articulated the state's substantial compliance doctrine in insurance contracts:

> Where the insured makes every reasonable effort under the circumstances, complying as far as he is able with the rules, and there is a clear manifestation of intent to make the change, which the insured has put into execution as best he can, equity should regard the change as effected.

*Pimentel v. Conselho Supremo De Uniao Portugeuza Do Estado Da California,* 6 Cal.2d 182, 188, 57 P.2d 131, 134 (1936).

The Supreme Court of California has relaxed the rule when interpreting provisions for death benefits under a mandatory teacher retirement system, requiring only an establishment of an intention to change beneficiaries and some affirmative action evidencing the exercise of the right to change.[3] *See Watenpaugh v. State Teachers' Retirement System,* 51 Cal.2d 675, 681, 336 P.2d 165, 169 (1959) (In Bank).

However, *Watenpaugh* dealt with a mandatory teacher retirement system. The lesser standard was justified because the retirement benefits at issue "were completely statutory in origin, membership in the retirement system [was] compulsory, and the requirements for change of beneficiary [were] not subject to negotiation." *Id.* The California Supreme Court very likely would apply the stricter standard under the facts of this case. The 401(k) Plan beneficiary designation provisions are not statutory and membership in the 401(k) Plan is not compulsory. Although the requirements for change of beneficiary were not negotiable, neither are they in insurance contracts. We therefore apply the California doctrine of substantial compliance as set forth in *Pimentel.*

In *Pimentel,* the insured signed a change of beneficiary form while ill in the hospital. 57 P.2d at 133, 6 Cal.2d at 187. He acknowledged his signature before a notary public and made statements to those around him that he was changing his beneficiary. *Id.* He then entrusted the form to his attorney "to take all necessary steps to complete the change." *Id.* at 132, 6 Cal.2d at 184. The form was never forwarded to the insurer, a fifty cent fee was not paid, and various ministerial actions required to be taken by the officers of the insurer were never accomplished. *Id.* The California Supreme Court properly concluded that the insured had done all

---

**3.** This relaxed substantial compliance doctrine is virtually identical to the one that the district court applied in this case. We need not reach whether the district court correctly applied this relaxed doctrine because we ultimately must apply the stricter doctrine.

that he could do to change the beneficiary and that the reason for its failure was beyond his control. *Id.* at 134, 6 Cal.2d at 188.

This case presents a different set of facts. At best, Mr. Montgomery was careless when he failed to sign the beneficiary designation form. He did not do all that he could have done. Mr. McMath argues that Mr. Montgomery did not sign the form because the 401(k) Plan failed to return the unsigned form to him, in contravention of their standard policy. However, the focus of the California cases is failures of the insurer that prevent a beneficiary change, rather than the insured's failures. *See Pimentel,* 57 P.2d at 131, 6 Cal.2d at 184; *Saunders v. Stevers,* 221 Cal.App.2d 539, 34 Cal.Rptr. 579 (1963); *Prudential Insurance Co. v. Withers,* 127 F.3d 1106 (9th Cir.1997) (unpublished disposition). In this case Mr. Montgomery was more at fault than was the Service Center.[4]

Therefore, we hold that Mr. Montgomery did not substantially comply with the beneficiary designation requirements of the 401(k) Plan under California's doctrine of substantial compliance.

### IV.

### CONCLUSION

For the foregoing reasons, we reverse the decision of the District Court and re-

mand for further proceedings in accordance with this decision.

### REVERSED AND REMANDED.

SNEED, Circuit Judge, specially concurring:

We made no presumption in the opinion that Mr. Montgomery intended to designate Mr. McMath as his beneficiary. I concur to emphasize that his designation would fail under California law even if extrinsic evidence could prove that he possessed such intent because California law requires a clear manifestation of intent *and* "every reasonable effort under the circumstances, complying as far as he is able with the rules." *See Pimentel v. Conselho Supremo De Uniao Portugeuza Do Estado Da California,* 6 Cal.2d 182, 188, 57 P.2d 131, 134 (1936). Mr. Montgomery did not comply as far as he was able with the beneficiary designation requirements.

California law properly recognizes that transfers of wealth at death should be done with a significant degree of formality and should not be left to the vagaries of the testimony of the indicated beneficiary and other claimants arising out of kinship or the murkiness of certain testimonial provisions. Thus, California law properly requires more than a clear manifestation of the intent of the decedent. It requires, to repeat, that the decedent make every reasonable effort under the circumstances to effect that change. This is a heavy burden to meet and, in most instances, will

---

4. *Cf. Saunders v. Stevers,* 221 Cal.App.2d 539, 34 Cal.Rptr. 579 (1963). The beneficiary designation requirements in *Saunders,* while ambiguous, appeared to require only written notice to effect a change. *See id.* at 581, 221 Cal.App.2d at 542. The insured fulfilled this requirement by a letter written to the insurance company:

> I have remarried and wish to have my policies mailed to the above address. Also I wish to have both my policies to read Becky Jane Stevers as beneficiary—Sincerely Nancy J. Bardosy. P.S.—I am removing my son Barney Robert Pearson Saunders he having been well provided for by his father.

*See id.* The insurance company subsequently sent the insured beneficiary change forms but she died before returning the forms. *See id.* The court's ruling appears to be based on the fact that the insured's first letter to the insurance company fulfilled the requirement that she give written notice to the insurer. *See id.* Her failure to complete the beneficiary designation forms was not fatal. *See id.* In contrast, the 401(k) Plan provides that the Beneficiary designation *"shall* only be made by submitting the form designated for that purpose ... to the Service Center."

not be met short of the decedent actually having signed the beneficiary designation form if such signature is required to effect the change.