Rowena H. LEUNG, Plaintiff,

v.

SKIDMORE, OWINGS & MERRILL, et al., Defendant.

No. C 00–03844 CRB.

United States District Court, N.D. California.

June 12, 2002.

W. George Wailes, Carr McClellan Ingersoll Thompson & Horn, Burlingame, CA, for plaintiff.

Donald P. Sullivan, Sonnenschein Nath & Rosenthal, San Francisco, CA, for Skidmore, Owings & Merrill Group Life Ins. Plan, Skidmore, Owings & Merrill, LLP, defendants.

Gregory P. Brock, Rebecca A. Hull, Sedgwick Detert Moran & Arnold, San

Francisco, CA, for Aetna Life Ins. Co., defendant.

Peter E. Romo, Jr., Carolyn A. Knox, Seyfarth Shaw, San Francisco, CA, for Connecticut General Life Ins. Co.

## MEMORANDUM AND ORDER

BREYER, District Judge.

Rowena Leung ("Mrs.Leung") filed this suit to collect on life insurance benefits under a policy that her husband, now deceased, had with his employer, Skidmore, Owings, & Merrill LLP ("SOM"). Mrs. Leung has named SOM, Skidmore, Owings & Merrill Group Life Insurance Plan (the "Insurance Plan"), and Connecticut General Life Insurance Company ("Connecticut General") and their parent CIGNA as defendants.

At a hearing on May 24, 2002, the Court granted plaintiff's motion to amend her complaint. The amended complaint states three causes of action. Now before the Court are defendants' motions to dismiss. For the reasons stated below, summary judgment in favor of all defendants is hereby GRANTED.[1]

## BACKGROUND

SOM hired Edmund Leung as a structural engineer in 1968. He received long-term disability ("LTD") and life insurance benefits through SOM's cafeteria plan. In August 1989, Mr. Leung's physician, Dr. Robert Kubin, diagnosed severe hypertension and Mr. Leung left work. Mr. Leung's symptoms included severe memory loss, speech difficulties, and incontinence. Because he was unable to return to work within a year, Mr. Leung was terminated on August 7, 1990. With the help of SOM employees, Mr. Leung was eventually able to secure LTD benefits.

On November 27, 1990, Mr. Leung signed a "Benefit Payment and Withholding Election Form" liquidating his 401(k) plan. Aguirre Decl., Ex. A. Mr. Leung did not fill in the blank asking for the date of retirement or termination. *Id.* However, the withdrawal made by Mr. Leung was possible only after termination of employment. Over the next several years, SOM and the Leungs corresponded regarding LTD benefits, and at least once with regard to the Leungs' purchase of a home. This correspondence is relevant only so far as it goes to the issue of whether Mr. Leung was aware of his termination in 1990 or whether he believed he was still technically "employed" by SOM and on disability leave. This correspondence will be highlighted where relevant.

Mr. Leung died on June 9, 1997. Mrs. Leung spent the next year and a half investigating the circumstances of her husband's death. In the spring of 1999 Mrs. Leung began to investigate her husband's life insurance policy with the help of her daughter, Allison Wakefield. She started by visiting SOM's office where she met with Frances Redwine. Subsequently she sent several letters to Redwine.

SOM's life insurance carrier had changed several times since Mr. Leung stopped working at SOM. As a result, Mrs. Leung apparently submitted claims to several carriers that never insured Mr. Leung. She also named multiple carriers in this suit. While the details of the confusion do not appear to be particularly important, the confusion was not Mrs. Leung's alone. Initially, SOM had difficulty determining which carrier provided Mr. Leung's life insurance.

At plaintiff's request, in November 1999 Michelle Gentile began an investigation to

1. Accordingly, Connecticut General's objections to evidence submitted by plaintiff are mooted.

determine which life insurance policy Mr. Leung was covered under while employed at SOM. As part of these efforts she contacted Connecticut General. It is now clear, that at the time of his termination in 1989, Mr. Leung was covered under a Connecticut General life insurance policy issued to SOM—policy number 0228218–01. The Summary Plan Description ("SPD") lists SOM as the plan sponsor, Thomas J. Eyerman of SOM as the Plan Administrator, and Connecticut General as the Funding Medium. *See* SPD at Bates 287 (Pennasilico Decl.Ex. B).

Only employees who worked 30 hours per week were eligible for life insurance under the plan. *See* Id. at 288. The SPD also states that coverage terminated when the employee "leave[s] active service." *Id.* at 289. Two further provisions are of particular importance here. First, premiums were waived for a year upon sufficient proof that the employee has been totally disabled for a period of nine months or more. Second, an employee could convert his group coverage to individual coverage if application was made within 31 days of termination of the group coverage.

In a letter dated April 5, 2000, CIGNA, the parent of Connecticut General, informed SOM that Mr. Leung's coverage had been canceled because Mr. Leung never applied for a Waiver of Premium or Conversion after he went out on disability on August 4, 1989. A copy of this letter was forwarded to plaintiff.

## LEGAL STANDARD

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if the fact may affect the outcome of the case. *See id.* at 248, 106 S.Ct. 2505. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir.1997). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *See id.* at 323, 106 S.Ct. 2548. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *See id.* Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan,* 91 F.3d 1275, 1279 (9th Cir.1996) (quoting *Richards v. Combined Ins. Co.,* 55 F.3d 247, 251 (7th Cir.1995), and noting that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

## DISCUSSION

Plaintiff's complaint states the following three causes of action: 1) an ERISA § 502(a)(1) claim for life insurance benefits, 2) an ERISA § 502(a)(3) claim for other relief, and 3) a claim that SOM violated a ERISA § 502(c) by failing to provide requested documents and information.

## I. Claim for Benefits under ERISA § 502(a)(1) (against all defendants)

Plaintiff brings a claim under ERISA § 502(a)(1) for payment of benefits under her husband's life insurance policy. Defendants raise several defenses to this claim.

### A. Failure to Exhaust

▮▮▮ Defendants claim that this action is barred because plaintiff has failed to exhaust her administrative remedies under the plan. The "general rule governing ERISA claims [is] that a claimant must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court." *Diaz v. United Agr. Employee Welfare Ben. Plan and Trust,* 50 F.3d 1478, 1483 (9th Cir.1995). As plaintiff points out, however, the exhaustion requirement is generally waived where resort to the plan's procedures would be futile or inadequate. *See id.*

There is no dispute that plaintiff did not technically exhaust her claim. In fact, she never formally submitted a claim for life insurance benefits to Connecticut General. However, in a letter dated April 5, 2000, CIGNA, the parent of Connecticut General, informed Mrs. Leung that it would "need ... documentation" of "Waiver of Premium or Conversion" to process her claim. *See* Pennasilico Decl.Ex. B. Plaintiff admits that she has no such documentation. Accordingly, if her efforts did not technically exhaust the available administrative remedies, it is clear that recourse to those remedies would be futile.

Indeed, defendants' argument that recourse to administrative procedures at this point would not be futile is somewhat disingenuous. Defendants claim that they are entitled to summary judgment, on several grounds other than exhaustion doctrine. Accordingly, it is difficult to see how recourse to their administrative procedures would not be an exercise in futility.

### B. Proper Party

Both SOM and Connecticut General claim that they are not proper defendants in a claim for benefits based on the law set forth in *Everhart v. Allmerica Financial Life Ins. Co.,* 275 F.3d 751 (9th Cir.2001). *Everhart* held that a claim for benefits, under section 502(a)(1), can be maintained only against the ERISA plan itself or against the plan administrator. The majority in that decision explicitly rejected a test, supported by the dissent, which would have permitted suit against any entity retaining discretionary authority over benefit determinations. *See Id.* at 754 n. 3. That is, the majority rejected a test that would rely on the fiduciary status of the defendant. Unfortunately, while rejecting fiduciary status as the test, the case offers little guidance as to the definition of a plan "administrator." A common sense definition of plan administrator would seem to admit of some overlap with the inquiry into fiduciary status, thereby permitting fiduciary considerations to creep back into a definition they were explicitly rejected from.

From *Everhart,* it is clear that this action can be maintained against the Insurance Plan itself. Further, because SOM is identified as the "plan administrator" in the SPD, there is at least a triable issue of fact as to whether SOM is the "plan administrator," and therefore summary judg-

ment as to SOM should be denied. The real issue concerns Connecticut General.

*Everhart* affirmed a granting of summary judgment in favor of the insurance company. But in *Everhart* both parties conceded that the employer was the plan administrator. *Id.* at 754. By contrast, in the instant action plaintiff argues that Connecticut General was at least a co-plan administrator with SOM. Connecticut General's moving papers admit that it was responsible for making claims decisions. The Court concludes that there is a triable issue of fact as to whether Connecticut General was a plan administrator.

### C. Merits

#### 1. Connecticut General

 It is undisputed that Mr. Leung was not technically covered under the group life insurance policy when he died.[2] It is further undisputed that plaintiff never submitted an actual application for waiver of premium due to disability or for conversion of his group coverage to individual coverage. Therefore, there is no real issue as to whether Connecticut General validly canceled coverage.

Plaintiff's only argument is that Mr. Leung substantially complied with the procedures for applying for a waiver of the life insurance premium due to his disability. Mr. Leung submitted a claim for short-term disability benefits to Connecticut General in August 1989. Plaintiff claims that this submission amounts to substantial compliance with the terms of the life insurance policy providing for extension of benefits during total disability.

The relevant portion of the life insurance policy states:

> If the Employee submits due proof to the Insurance Company that he became Totally Disabled prior to his 60th birthday and has remained continuously Totally Disabled for 9 months or more, his Term Life Insurance will be extended, without further payment of premiums for him, for a period of one year ...

Policy at § 24.

As an initial matter, there is a serious question as to whether the California doctrine of substantial compliance applies in this context. In ERISA cases, it appears that the doctrine has only been applied in the context of an attempt to change the designated beneficiary. *See Bankamerica Pension Plan v. McMath,* 206 F.3d 821 (9th Cir.2000). But even if the doctrine were to apply, Mr. Leung's actions do not amount to substantial compliance, which is defined as "every reasonable effort under the circumstances." *Id.* at 830. Mr. Leung did not make an application to Connecticut General that in any way related to life insurance benefits. He made a claim for short-term disability benefits. These actions were not "every reasonable effort under the circumstances" to secure a life insurance premium waiver due to disability.

Connecticut General is entitled to summary judgment on this count.

---

2. Plaintiff suggests that her statements create a triable issue of fact as to whether Mr. Leung was still "employed" during his period of disability. For example, a letter dated July 29, 1996 from Mr. and Mrs. Leung to SOM, regarding disability payments, states that: "Edmund Leung is an employee at the San Francisco office. He is currently on disability leave." *See* Plaintiff's Exhibits, Ex. 11.

While this letter may raise the issue of whether the Leungs were aware that Mr. Leung had been terminated, it does not raise an issue as to whether Mr. Leung had been officially terminated. Nor does the fact that SOM did not specifically disclaim this statement in responding to the Leung's letter create a triable issue of fact.

### 2. Skidmore, Owings, & Merrill

■ ERISA § 502(a)(1)(B) provides a right of action "to recover benefits due . . . under the terms of the plan." As stated above, under the terms of the plan, plaintiff was not due any benefits because under the terms of the plan, Mr. Leung's coverage ceased when he stopped working 30 hours per week and Mr. Leung did not pursue the only avenues for extending the coverage, total disability and conversion. It is undisputed that plaintiff was actually terminated. And even if the Leungs were unaware of this fact, they certainly knew that Mr. Leung was not working 30 hours per week as required by the terms of the policy.

■ In essence, it appears that plaintiff argues that SOM failed to adequately inform Mr. Leung that he had been terminated. Section 502(a)(1)(B) does not permit recovery for reporting and disclosure violations. *See Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1167 (3rd Cir. 1990). The Ninth Circuit deviated from this generally accepted rule in *Blau v. Del Monte Corp.*, 748 F.2d 1348 (9th Cir.1984), and reversed summary judgment in favor of a defendant who had failed to comply with reporting and disclosure requirements. But in *Blau* the Ninth Circuit presumed that substantive harm had resulted from "defendants' egregious procedural violations." *See McKenzie v. General Telephone Co. of California*, 41 F.3d 1310, 1315 (9th Cir.1994). There have been no egregious violations in this case, therefore SOM is entitled to summary judgment on this basis.

## II. Claim for Other Relief under ERISA § 502(a)(3) (against Insurance Plan and Connecticut General)

■ Defendants claim that they are entitled to summary judgment on this claim because plaintiff seeks an award of money damages, and such an award is not available under section 502(a)(3). Plaintiff concedes that legal remedies are not available, under section 502(a)(3), but argues that the relief she requests can be characterized as equitable.

■ By its terms, section 502(a)(3) permits a civil action by a beneficiary seeking an injunction or "other appropriate equitable relief" for violations of ERISA. 29 U.S.C. § 1132(a)(3). Damages cannot be recovered in a civil action under section 502(a)(3). *See Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 718–19, 151 L.Ed.2d 635 (2002); *Bast v. Prudential Ins. Co. of America*, 150 F.3d 1003, 1009 (9th Cir.1998).

Plaintiff urges that the relief she requests can be considered equitable. She states, "the Court might order Defendants to accept a late request for conversion, premium waiver and claim . . ." She also suggests that the Court might order restitution. These arguments are unconvincing.

■ In *Great–West*, the Court significantly narrowed the forms of restitution that were available under section 502(a)(3). "[F]or restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 714–15. In essence, only a constructive trust or equitable lien would be appropriate under section 502(a)(3). *Id.* at 715. Because there is no specific property that defendants are in possession of, to which plaintiff asserts a legal claim, such relief would not be appropriate in this case.

Finally, plaintiffs argument that the Court might order defendants to accept a late request for conversion or waiver of premium is a creative attempt to disguise a claim for damages as a claim for equitable relief. If Mr. Leung were still alive,

such an order from the Court might constitute equitable relief. But Mr. Leung has passed, thereby triggering any payment due under life insurance. Plaintiff in this case seeks a monetary award of life insurance benefits she claims are due. In drawing a distinction between equitable and legal relief, *Great–West* makes clear that this Court should look to the substance of the requested relief. Here the requested relief is a monetary award. "A claim for money due and owing under a contract is quintessentially an action at law." *Wal–Mart Stores, Inc. Associates' Health and Welfare Plan v. Wells*, 213 F.3d 398, 401 (7th Cir.2000) (internal quotation omitted). Therefore, defendants are entitled to summary judgment on this claim.

### III. ERISA § 502(c) (against SOM)

■ Plaintiff's Third Cause of Action alleges a violation of section 502(c),[3] which provides as follows:

> Any administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary ... may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1)(B).

As alleged, beginning on June 24, 1999, Mrs. Leung and Allison Wakefield sent several letters and made numerous phone calls requesting information and documents concerning Mr. Leung's life insurance coverage to SOM. In the course of correspondence, plaintiff requested the following documents and/or information: 1)

Mr. Leung's personnel file, 2) Claim form for the Aetna Insurance Company, 3) Copy of insurance policy, 4) Certificate of Insurance, and 5) status of "process of filing the claim." *See* Exhibits 14, 15, and 25.

Section 502(c) provides a remedy for a failure to provide information, but does not, of its own force, give rise to a duty to provide any particular information. A remedy under section 502(c) is appropriate only where other ERISA provisions create an affirmative duty to disclose information. An administrator is required to provide the information listed in sections 104(b)(4) and 503. Because SOM was not required, by either of these sections, to provide the information that plaintiff requested, defendant is entitled to summary judgment on this ground.

### A. ERISA § 104(b)(4)

ERISA section 104(b)(4) provides:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C. § 1024(b)(4). It "requires the disclosure of only the documents described with particularity and 'other instruments' similar in nature." *Hughes Salaried Retirees Action Committee v. Administrator of Hughes Non–Bargaining Retirement Plan*, 72 F.3d 686, 691 (9th Cir.1995) (en banc).

■ SOM argues that it was not required to produce any of the documents or information that plaintiff requested be-

---

**3.** Technically it may have been proper to plead this cause of action under ERISA § 502(a)(1)(A) which provides a private right of action for reporting and disclosure violations pursuant to section 502(c).

cause plaintiff requested only outdated documents (those that were in effect at the time of Mr. Leung's termination) and not the "latest" information regarding operation of the plan. The Seventh Circuit has held that "outdated plan descriptions do not fall into any of the categories of documents a plan administrator must provide to plan participants under section 1024(b)(4)." *Shields v. Local 705, Intern. Broth. of Teamsters Pension Plan,* 188 F.3d 895, 903 (7th Cir.1999). Defendant also cites the Ninth Circuit case *Cline v. Industrial Maintenance Engineering & Contracting Co.,* 200 F.3d 1223 (9th Cir. 2000) to support this proposition. This case implies that only current documents must be provided by the plan administrator, but does not address the issue directly.

Indeed, an examination of the statutory language itself makes clear that the purpose of section 1024(b)(4) is provide ready access to "documents which provide a plan participant with information concerning how the plan is operated," *Allinder v. Inter–City Products Corp. (USA),* 152 F.3d 544 (6th Cir.1998). As discussed above, Mr. Leung was not a plan participant at the time that Mrs. Leung made these requests. Had Congress desired that section 1024(b)(4) provide for disclosure of outdated documents, it would have been easy to adopt statutory language to that effect.

It may be possible to construe plaintiff's correspondence as a request for a claim form. However, such a claim is not covered by section 1024(b)(4). *See Allinder v. Inter–City Products Corp. (USA),* 152 F.3d 544, 550 (6th Cir.1998) ("a plan participant may not invoke § 1132(c) to collect penalties from an administrator who fails to supply or complete claim forms"); *Arsenault v. Bell,* 724 F.Supp. 1064, 1066 (D.Mass.1989) ("Congress did not intend

that claim forms be among the materials contemplated under [section 502(c)]").

As plaintiff appears to largely concede, section 1024(b)(4) does not require defendant to provide the information that was requested in this case.

## B. ERISA § 503

Section 503 of ERISA provides:

In accordance with regulations of the Secretary, every employee benefit plan shall—

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. The problem with plaintiff's reliance on this provision is obvious—plaintiff never made a formal claim for benefits, as such no claim was formally denied. It would stretch too far to interpret any of the correspondence from Mrs. Leung or Allison Wakefield as an explanation of the reason that benefits were denied. Accordingly, no duty to disclose the requested information arises from section 503.

Accordingly, defendant is entitled to summary judgment on this cause of action.

## C. Discretionary Nature of Penalty

Even if SOM had violated a legal duty to provide information, the Court would not, in an exercise of its discretion, impose a penalty under section 502(c).

The Court is mindful that section 502(c) is a penalty provision. It is designed to ensure compliance with disclosure provi-

sions. A penalty under section 502(c) may be appropriate even in the absence of bad faith on the part of the plan administrator or prejudice to the beneficiary. *See Bemis v. Hogue,* 635 F.Supp. 1100, 1106 (E.D.Mich.1986). Even if SOM was obligated to provide some of the information requested by Mrs. Leung, the goal of encouraging compliance with disclosure requirements would not be furthered by imposition of a penalty in this case.

Plaintiff requested documents that were in effect ten years previous. It is understandable that SOM had trouble, and experienced confusion, in providing them. Indeed, plaintiff did not make her initial request until two years after her husband had passed.

The uncontroverted evidence shows that Mr. Leung was not a beneficiary of the SOM plan when he deceased in 1997. The Court is sympathetic with plaintiff's situation, but it will not undertake a twisted interpretation of ERISA's disclosure requirements to provide a remedy. Mrs. Leung directed information requests to SOM in 1999. At that point, her husband had not been covered under the group life insurance plan for nine years. ERISA's disclosure requirements are meant to protect plan participants and their beneficiaries. While she may have been unaware of the fact at the time, plaintiff was neither. Imposing a penalty under these circumstances would not further any purpose served by section 502(c).

### CONCLUSION

For the reasons state above, defendants' motion for summary judgment is hereby GRANTED as to all defendants and all causes of action.

**IT IS SO ORDERED.**