133 Nev., Advance Opinion 58

# IN THE SUPREME COURT OF THE STATE OF NEVADA

GILBERT JAY PALIOTTA,
Appellant,
vs.
THE STATE OF NEVADA IN
RELATION TO THE NEVADA
DEPARTMENT OF CORRECTIONS;
AND RENEE BAKER, WARDEN,
Respondents.[1]

No. 66664



FILED

SEP 14 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order granting summary judgment in an inmate litigation (civil rights) matter. Seventh Judicial District Court, White Pine County; Gary Fairman, Judge.

*Reversed and remanded with instructions.*

McDonald Carano Wilson LLP and Adam D. Hosmer-Henner, Reno, for Appellant.

Adam Paul Laxalt, Attorney General, and Clark G. Leslie, Assistant Solicitor General, Carson City, for Respondent.

---

[1]It appears from appellant's notice of appeal and the documents accompanying the notice that the following individuals are also potential respondents to this appeal: Claude Willis, Casework Specialist III; Tasheena Sandoval, Casework Specialist II; David McNeely, Administrative Service Officer; and John Doe, Grievance Responder. To the extent that these individuals are properly named respondents, this opinion shall apply to them as well.

17-31069

BEFORE THE COURT EN BANC.[2]

*OPINION*

By the Court, HARDESTY, J.:

Appellant Gilbert Jay Paliotta, a Nevada inmate who follows the Thelemic faith, filed suit under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. §§ 2000cc to 2000cc-5, the Free Exercise Clause of the First Amendment, and the Equal Protection Clause of the Fourteenth Amendment after respondents State of Nevada, Nevada Department of Corrections, and Renee Baker, Warden (collectively, the State) denied his request for a religious diet. The district court dismissed Paliotta's claims, finding as a matter of law that a religious diet is not central to the Thelemic faith. Because the district court used the centrality test rather than the sincerely held belief test in its analysis of Paliotta's Free Exercise and RLUIPA claims, we reverse.

*FACTS AND PROCEDURAL HISTORY*

Paliotta is incarcerated at the Ely State Prison. In March 2011, Paliotta filed a form with the Nevada Department of Corrections declaring himself a Thelemist. According to Paliotta, Thelema was founded in 1904 in Egypt by Aleister Crowley. The religion is based on the idea: "Do what thou wilt shall be the whole of the Law." Practitioners, such as Paliotta, interpret this to partially mean: "eat and drink what one will." Some practitioners also practice other religions in furtherance of their Thelemic beliefs.

---

[2]The Honorable Lidia S. Stiglich, Justice, did not participate in the decision of this matter.

 

Paliotta contacted the prison chaplain about receiving a traditional Egyptian diet that was "in accordance with [his] Thelemic beliefs." The chaplain suggested that Paliotta request a kosher diet instead, which he did. Later that month, Paliotta submitted an inmate request form indicating that he was waiting to hear back about his request to participate in a religious diet.

In April 2011, Paliotta submitted an updated request form, which sought a Thelemic diet and stated that Thelema draws its principles from ancient Egyptian religions. He argued that because Egypt once ruled over Hebrews and Jewish people, and Hebrews "ate the original 'kosher' meal of the Egyptians," that a kosher meal should be provided to him in accordance with his faith. His request was denied.

Paliotta then submitted an informal grievance demanding to be placed on a kosher diet or, in the alternative, on a traditional Egyptian diet. The grievance was denied because a kosher diet was not listed under the Department of Correction's regulations as a religious consideration for Thelema. In June and July 2011, Paliotta filed first- and second-level grievances, respectively, challenging the regulation as it improperly categorized Thelema with non-Thelema religions and challenging the denial of the dietary requests because kosher meals were provided to other non-Jewish inmates. The grievances were denied.

Paliotta filed a verified complaint with the district court against the State. He alleged that in denying his requested dietary plans, the State violated the Free Exercise Clause of the First Amendment, RLUIPA, and the Equal Protection Clause of the Fourteenth Amendment. Specifically, Paliotta alleged that his sincerely held religious belief in maintaining a Thelemic diet was substantially burdened because

(1) Thelema is not listed in the Department of Correction's religious guidelines; (2) he requested, and was denied, a traditional Egyptian diet; and (3) he was denied a kosher diet after he sought a compromise in the dietary selection with the State.

The parties filed competing motions for summary judgment. The district court granted summary judgment for the State because it found that Paliotta's request for a kosher diet was not based in Thelemic beliefs. In reaching its conclusion, the district court engaged in a lengthy analysis of Paliotta's claims within the context of Free Exercise jurisprudence. The district court reasoned that under the First Amendment and RLUIPA, Paliotta only claimed a "social connection" between Thelema and Hebrew traditions, which meant that Paliotta's request for a kosher or traditional Egyptian diet was not based in theological beliefs but secular beliefs. Thus, the district court incorporated its analysis of Paliotta's Free Exercise claims as a part of its analysis of Paliotta's RLUIPA claims and determined that, because he could not sustain a claim under a Free Exercise standard, his RLUIPA claims must similarly fail. The district court did not address Paliotta's equal protection claim.[3] Paliotta appeals the district court's decision.

## DISCUSSION

On appeal, Paliotta asserts that the district court erred in using the centrality test in determining that Paliotta could not sustain a

___

[3]The State presented a qualified immunity defense at district court. The district court considered this issue moot because it granted summary judgment for the State. In light of our disposition in this opinion, this issue is no longer moot and must be considered by the district court on remand.

SUPREME COURT
OF
NEVADA

(O) 1947A

Free Exercise or RLUIPA claim. The State responds that the district court properly found that Paliotta's request for a traditional Egyptian or kosher diet was not grounded in Thelemic belief and he thus failed to state a claim under Free Exercise or RLUIPA jurisprudence. In examining the parties' respective arguments, we begin our analysis with a brief overview of the requirements for bringing a claim under the Free Exercise Clause and RLUIPA. We then turn to Paliotta's claims and his assignments of error on appeal.

*Free Exercise Clause and RLUIPA claims in general*

While claims under the Free Exercise Clause are often brought in conjunction with claims under RLUIPA, "[t]he standards [for establishing a prima facie case] under RLUIPA are different from those under the Free Exercise Clause." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1314 (10th Cir. 2010). Although explained in more detail below, a brief overview of the requirements for bringing successful Free Exercise Clause and RLUIPA claims is warranted.

"In general, a plaintiff will have stated a free exercise claim if: (1) the claimant's proffered belief [is] sincerely held; and (2) the claim [is] rooted in religious belief, not in purely secular philosophical concerns." *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015) (alterations in original) (internal quotation marks omitted). Prisoners enjoy protection under the Free Exercise Clause, but that protection is "limited by institutional objectives and by the loss of freedom concomitant with incarceration." *Id.* (internal quotation marks omitted). Thus, "a prisoner's Free Exercise Clause claim will fail if the State shows that the challenged action is 'reasonably related to legitimate penological interests.'" *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

In contrast, "[t]o state a claim under RLUIPA, a prisoner must show that: (1) he takes part in a 'religious exercise,' and (2) the State's actions have substantially burdened that exercise." *Id.* at 1134. The statutory definition of "religious exercise" is "intentionally broad," *id.*, and covers "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," *id.* (quoting 42 U.S.C. § 2000cc–5(7)(A)). If the prisoner shows that he is engaged in a religious exercise that State action has substantially burdened, "the State must prove its actions were the least restrictive means of furthering a compelling governmental interest." *Id.*

We turn now to Paliotta's claims.

*Standard of review*

A district court's order granting summary judgment is reviewed de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). "Summary judgment is appropriate . . . when the pleadings and other evidence on file demonstrate that no genuine issue as to any material fact [remains] and that the moving party is entitled to a judgment as a matter of law." *Id.* (internal quotation marks omitted). All evidence "must be viewed in a light most favorable to the nonmoving party." *Id.*

*The district court erred in concluding that Paliotta's Free Exercise Clause claim failed as a matter of law*

The Free Exercise Clause of the First Amendment to the United States Constitution, which has been applied to the States through the Fourteenth Amendment, *see Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940), provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."

> To merit protection under the free exercise clause of the First Amendment, a religious claim must satisfy two criteria. First, the claimant's proffered belief must be sincerely held; the First Amendment does not extend to so-called religions which . . . are obviously shams and absurdities and whose members are patently devoid of religious sincerity. Second, the claim must be rooted in religious belief, not in purely secular philosophical concerns. Determining whether a claim is rooted in religious belief requires analyzing whether the plaintiff's claim is related to his sincerely held religious belief.

*Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (internal quotation marks and citations omitted), *supplemented*, 65 F.3d 148 (9th Cir. 1995). However, as noted above, a prisoner's religious claim otherwise protectable under the Free Exercise Clause will fail if the State can demonstrate that its action is "reasonably related to legitimate penological interests." *Walker*, 789 F.3d at 1138 (9th Cir. 2015) (internal quotation marks omitted).

The district court found, and the State does not dispute, that Paliotta was sincere in his Thelemic beliefs. Therefore, we only consider whether Paliotta's dietary request was related to his sincere religious beliefs. *Malik*, 16 F.3d at 333.

*Paliotta's dietary request was related to his sincere Thelemic beliefs*

Paliotta argues that his request for a kosher diet is sufficient to implicate free exercise protection under *Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008). Despite conceding that Paliotta is sincere in his Thelemic

beliefs, the State argues that Paliotta only requested a kosher diet out of a personal desire to be served more appealing prison food.[4]

In *Shakur*, the United States Court of Appeals for the Ninth Circuit considered whether it was "the sincerity of [a prisoner's] belief rather than its centrality to his faith that is relevant to the free exercise inquiry." 514 F.3d at 884. The court cited to United States Supreme Court caselaw stating that "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." *Id.* (alteration in original) (quoting *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989)). "Given the Supreme Court's disapproval of the centrality test, [the court was] satisfied that the sincerity test . . . determines whether the Free Exercise Clause applies." *Id.* at 885.

More specifically, in *Shakur*, a Muslim prisoner requested a kosher diet because his vegetarian diet caused him "gastrointestinal discomfort [that] interfere[d] with the state of purity and cleanliness needed for Muslim prayer." *Id.* at 881-82 (internal quotation marks omitted). He alleged that the kosher diet, which had the meat-based protein he desired, was consistent with a Halal diet. *Id.* "Shakur conceded during the summary judgment proceedings that he [was] not

---

[4]In support of its argument, the State relies on *United States v. Kuch*, 288 F. Supp. 439, 444 (D.D.C 1968) ("It is clear that the desire to use drugs and to enjoy drugs for their own sake, regardless of religious experience, is the coagulant of this organization and the reason for its existence."). We find this case to be inapposite because it, like many older federal cases, applies a centrality test. *See id.* (stating that the church in question did not provide any "solid evidence of a belief in a supreme being, a religious discipline, a ritual, or tenets to guide one's daily existence").

*required* as a Muslim to eat Halal meat." *Id.* at 885. The district court determined that consuming Halal meat was not a central tenet of Islam and granted summary judgment for the prison. *Id.* at 883. The Ninth Circuit disagreed and concluded that "the district court impermissibly focused on whether consuming Halal meat is required of Muslims as a central tenet of Islam, rather than on whether Shakur sincerely believes eating kosher meat is consistent with his faith." *Id.* at 885 (internal quotation marks omitted).

Here, the district court cited to *Shakur*, noting that a sincerity test, not a centrality test, is the current standard. Nonetheless, the district court concluded that Paliotta's request for a kosher diet was not related to Thelema or a theological conviction. The district court reasoned that Paliotta's argument that there was "a 'social connection' to Judaism that entitles him to a religious diet" only demonstrated a secular conviction. As a result, the district court determined that Paliotta's "Free Exercise claim fails as a matter of law," which we conclude was error.

Under *Shakur*, the question is whether Paliotta "sincerely believes eating [a] kosher [diet] is consistent with his faith." 514 F.3d at 885. The district court did not undertake this analysis. Rather, it erroneously conducted a centrality analysis by inquiring into whether Thelemic tenets require a kosher diet—"Plaintiff also fails to offer any evidence that the alleged ties between the Egyptian religion and the Hebrew tradition requires him as a practicing Thelemist to maintain a kosher diet."

When viewed in a light most favorable to Paliotta, the evidence presented in the district court clearly demonstrates that Paliotta sincerely believed that eating a kosher diet is consistent with and in

furtherance of his faith. For instance, in his informal grievance, Paliotta explained his belief that there is a mystical connection between Thelema, Egyptian religions, and Judaism. Additionally, in his April 2011 inmate request form, Paliotta stated that "Thelema draws its principle gods & goddesses from ancient Egyptian religion . . . [that] once ruled over the Hebrews [and] Jews . . . [who] ate the ORIGINAL 'kosher' meal of the Egyptians." Paliotta also alleged in his complaint that Thelema has its "roots in Judaism and Egyptian mythology. The three are inextricably linked. . . . [E]ach [Thelemist] has the right to fulfill themselves through whatever beliefs and actions are best suited to them . . . and only they themselves are qualified to determine what these are." Finally, in opposing the State's motion for summary judgment, Paliotta attached another Thelemic practitioner's writing that discussed how Thelema is consistent with Judaism and how that practitioner had added Jewish practices to supplement his Thelemic belief.

Accordingly, we conclude that Paliotta presented prima facie evidence that his sincere belief warrants First Amendment protection under *Shakur*. 514 F.3d at 885. Specifically, the State concedes that Paliotta was sincere in his belief and Paliotta presented sufficient evidence that his "claim [was] rooted in religious belief, not in purely secular philosophical concerns." *Walker*, 789 F.3d at 1138 (internal quotation marks omitted). Thus, the district court erred in concluding that Paliotta's Free Exercise Clause claim failed as a matter of law, and this case must be remanded for a determination as to "whether the State's interest in compliance with the Equal Protection Clause is reasonably related to legitimate penological interests." *Id.*

In making its determination, the district court should consider: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) whether "accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff"; and (4) whether there is "an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests." *Turner v. Safley*, 482 U.S. 78, 89-91 (1987) (internal quotation marks omitted).

*The district court erred in concluding that Paliotta's RLUIPA claim failed as a matter of law*

The district court incorporated its analysis of Paliotta's free exercise claims in rendering its determination that Paliotta's RLUIPA claims also failed as a matter of law. However, as explained above, "[t]he standards [for establishing a prima facie case] under RLUIPA are different from those under the Free Exercise Clause." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1314 (10th Cir. 2010).

In bringing a claim under RLUIPA, the plaintiff bears the initial burden of persuasion to "produce[ ] prima facie evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of section 2000cc of" RLUIPA. 42 U.S.C. § 2000cc-2(b). Section 2000cc-1(a) provides, in relevant part, that

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and

Supreme Court
of
Nevada

(O) 1947A

11

(2) is the least restrictive means of furthering that compelling governmental interest.

"Thus, to proceed with his RLUIPA claim, [Paliotta] must demonstrate he wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government." *Abdulhaseeb*, 600 F.3d at 1312. RLUIPA should "be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by [RLUIPA] and the Constitution." 42 U.S.C. § 2000cc-3(g).

The district court stated that "there is nothing in the record to suggest [Paliotta] isn't sincere in his belief that he is entitled to a religious diet as a result of this Thelemic faith." As a result of this determination, we analyze for purposes of RLUIPA whether Paliotta has demonstrated that consuming a kosher or traditional Egyptian diet constitutes a "religious exercise" under RLUIPA and whether that exercise was "subject to a substantial burden imposed" by the State. 42 U.S.C. § 2000cc-1(a); *Abdulhaseeb*, 600 F.3d at 1312.

*Paliotta's dietary requests constituted a "religious exercise" under RLUIPA*

RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Paliotta argues that his request for a kosher diet is a religious exercise under *Koger v. Bryan*, 523 F.3d 789 (7th Cir. 2008), and he actually desired an Egyptian diet but compromised by officially requesting a kosher diet.

In *Koger*, the court considered whether a Thelemic prisoner's request for a non-meat diet was protected under RLUIPA. 523 F.3d at 797. The court overturned the district court's granting of summary

judgment against the inmate, concluding that the prisoner's "religious exercise [was] rooted in sincerely held beliefs." *Id.* at 798. The court pointed to a letter from a group of Thelemic practitioners stating that although there were no general dietary restrictions, "each individual Thelemite may, from time to time, include dietary restrictions as part of his or her personal regimen of spiritual discipline." *Id.* at 797 (internal quotation marks omitted).

The court stated that "this portion of [the] letter can be accurately restated using the statutory definition, i.e., while there are no dietary restrictions 'compelled by' or 'central to' [Thelema], many of its practitioners adopt such restrictions as part of their 'exercise' of Thelema." *Id.* The court went on to note that had Koger been insincere in his religious beliefs, he could have attempted to align himself with a denomination that routinely consumed the type of diet he was requesting. *Id.* Instead, Koger chose to practice the Thelemic religion, "with which the prison officials were unfamiliar," thereby indicating that his religious beliefs "were sincerely held." *Id.*

Similarly, Paliotta has demonstrated that his dietary request was a "religious exercise rooted in sincerely held beliefs." *Id.* at 798. Notably, Paliotta presented evidence showing that some Thelemists translate "[d]o what thou wilt" to "eat and drink what one will." And, in opposing the State's summary judgment motion, Paliotta pointed to a teaching from a Thelemic holy book that requires practitioners to "eat rich foods and drink sweet wines that foam." Paliotta also presented evidence to suggest that his Thelemic beliefs are linked with Egypt and Judaism because Thelema was started in Egypt, draws many beliefs from ancient Egyptian religions, and some Thelemic practitioners adopt dietary

restrictions. If Paliotta was not sincere in his belief that kosher meals are consistent with his religion and was instead only trying to receive a more favorable dietary plan, it would arguably have been easier for him to affiliate with Judaism. *See Koger*, 523 F.3d at 797.

Although the State presented an affidavit from a Thelemic priest stating that the religion does not require a kosher or otherwise religious diet, this does not negate the protections afforded under RLUIPA. *See Holt v. Hobbs*, ___ U.S. ___, ___, 135 S. Ct. 853, 863 (2015) (explaining that even if petitioner's belief were idiosyncratic, RLUIPA's guarantees are "not limited to beliefs which are shared by all of the members of a religious sect" (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 715-16 (1981)). Moreover, despite the district court's acknowledgement of Paliotta's initial request for an Egyptian diet, it appears that the court improperly focused its analysis on Paliotta's subsequent request for a kosher meal. The State does not dispute that Paliotta initially requested an Egyptian diet, which was denied. Paliotta alleged in his complaint that he requested the kosher diet after contacting the prison chaplain who suggested that Paliotta request a kosher diet because of the ties between Thelema and Judaism. Such a compromise is not indicative that Paliotta's dietary request "does not qualify as a sincere religious belief" as the district court determined.

Broadly construing the protections afforded under RLUIPA, we conclude that Paliotta has made a prima facie showing that his dietary request was a "religious exercise." *See* 42 U.S.C. § 2000cc-3(g) ("[RLUIPA] shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of [RLUIPA] and the Constitution."); *Abdulhaseeb*, 600 F.3d at 1312. We must now decide

whether Paliotta's religious exercise was substantially burdened by the State.

*Paliotta's "religious exercise" was substantially burdened by the State*

RLUIPA prohibits the State from "impos[ing] a substantial burden on the religious exercise" of a prisoner. 42 U.S.C. § 2000cc-1(a). The State argues that not allowing Paliotta to receive a kosher diet is not a substantial burden because the diet does not correspond to any tenet of Thelema. Paliotta argues that a complete inability to engage in a sincere religious exercise constitutes a substantial burden. Additionally, he argues that a substantial burden test that inquires into religious tenets would render meaningless RLUIPA's definition of religious exercise. The district court did not address this issue.

A prisoner must make a prima facie showing that the state's action imposes a "substantial burden on the exercise of his religious beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). "[T]he Supreme Court has found a substantial burden as 'where the state . . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id.* at 995 (second and third alterations in original) (quoting *Thomas*, 450 U.S. at 717-18). The United States Supreme Court recently decided that, under RLUIPA, it is irrelevant whether a prisoner is "able to engage in other forms of religious exercise," when the prisoner is forced to "engage in conduct that seriously violates [his] religious beliefs." *Holt*, ___ U.S. at ___, 135 S. Ct. at 862 (alteration in original) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, ___ U.S. ___, ___, 134 S. Ct. 2751, 2775 (2014)).

> When Congress enacted RLUIPA, it included the broad definition of religious exercise . . . . This

inclusion prompted . . . consideration of what constitutes a substantial burden. Accordingly, in 2003 we held that in the context of RLUIPA's broad definition of religious exercise, a . . . regulation that imposes a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable. In determining when an exercise has become "effectively impracticable," it is helpful to remember that in the context of the Free Exercise Clause, the Supreme Court held that a government imposes a substantial burden on a person's beliefs when it put[s] substantial pressure on an adherent to modify his behavior and violate his beliefs.

*Koger*, 523 F.3d at 799 (internal quotation marks and citations omitted) (third, fourth, and fifth alterations in original).

We are persuaded by the *Koger* court's reasoning and conclude that, when determining whether the exercise of a prisoner's religious beliefs has been substantially burdened by the State, courts cannot consider whether the conduct the prisoner has requested to engage in is a precept of the prisoner's stated religion. Doing so would require the prisoner to "establish exactly what RLUIPA does not require—that [the conduct] was 'compelled by' or 'central to' [the prisoner's] faith." *Koger*, 523 F.3d at 798 (quoting 42 U.S.C. § 2000cc-5(7)(A)). The proper inquiry is whether the State's actions on the requested conduct force the prisoner to "engage in conduct that seriously violates [his] religious beliefs," *Holt*, ___ U.S. at ___, 135 S. Ct. at 862 (alteration in original), "rendering [the prisoner's] religious exercise . . . effectively impracticable," *Koger*, 523 F.3d at 799 (internal quotation marks omitted).

Here, we conclude that Paliotta has made a prima facie showing that the State's complete denial of his request for either an

Egyptian or kosher diet substantially burdens the exercise of Paliotta's religious beliefs because it forces him to "modify his behavior and violate his [sincere religious] beliefs." *Koger*, 523 F.3d at 799 (internal quotation marks omitted); *see also Warsoldier*, 418 F.3d at 994.

*Issues unresolved in the district court*

Because the district court concluded that Paliotta's dietary request was not protectable under the Free Exercise Clause or RLUIPA, it did not decide whether the State's denial of Paliotta's request for either an Egyptian or kosher diet was "reasonably related to legitimate penological interests." *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015) (internal quotation marks omitted). The district court similarly did not consider whether the State's denial of Paliotta's request furthers "a compelling governmental interest" and "is the least restrictive means of furthering" that interest. 42 U.S.C. § 2000cc-1(a). These are factual issues that must be decided by the district court on remand. *See Liu v. Christopher Homes, LLC*, 130 Nev. 147, 156, 321 P.3d 875, 881 (2014) ("We do not resolve . . . factual issue[s] that the district court did not reach, as doing so would require us to inappropriately weigh the evidence and resolve questions of fact for the first time on appeal. It is up to the district court on remand to resolve these questions.").

In addition, Paliotta's complaint included an equal protection claim under the Fourteenth Amendment. The State argued that it was entitled to summary judgment on the equal protection claim, but the district court failed to consider this claim before granting the State's

motion for summary judgment in its entirety. Thus, the district court must also address this issue on remand.[5] *See id.*

## *CONCLUSION*

Because we conclude that Paliotta made a prima facie showing that his sincere religious beliefs may be entitled to protection under the Free Exercise Clause of the First Amendment and RLUIPA, the district court erred in determining that Paliotta's Free Exercise Clause and RLUIPA claims failed as a matter of law and in granting summary judgment in its entirety in favor of the State. Accordingly, we reverse the district court's summary judgment and remand this matter to the district court. On remand, the district court must consider: (1) under the Free Exercise Clause, whether the State's denial of the meal request was "reasonably related to legitimate penological interests," *Walker*, 789 F.3d at 1138 (internal quotation marks omitted); (2) under RLUIPA, whether there was "a compelling governmental interest" and the denial of the meal request was "the least restrictive means of furthering" that interest, 42

---

[5]Paliotta argues on appeal that he made other religious requests to the prison, such as requests to use the chapel and observe the solstice, which were ignored by the district court. He contends that the district court erred by granting summary judgment as to the entire complaint rather than just as to his dietary request. However, our review of the complaint in the record before us reveals no such allegations, and we thus conclude that this argument is without merit.

U.S.C. § 2000cc-1(a); (3) whether Paliotta's equal protection claim has merit; and (4) whether the State's qualified immunity defense has merit.

_____, J.
Hardesty

We concur:

_____, C.J.
Cherry

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Parraguirre

SUPREME COURT
OF
NEVADA

(O) 1947A