**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DENNIS WALKER,
*Plaintiff-Appellant*,

v.

JEFFREY BEARD[*], CDCR Secretary
and KATHLEEN DICKERSON, Warden,
CMF Prison,
*Defendants-Appellees*.

No. 12-17460

DC No.
2:11-cv- 2728
KJM-GGH

OPINION

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, District Judge, Presiding

Argued and Submitted
February 10, 2015—San Francisco, California

Filed June 18, 2015

Before: Sidney R. Thomas, Chief Judge, A. Wallace
Tashima and M. Margaret McKeown, Circuit Judges.

Opinion by Judge Tashima

---

[*] Jeffrey Beard is substituted for his predecessor Matthew L. Cate, as Secretary of the California Department of Corrections and Rehabilitation, pursuant to Fed. R. App. P. 43(c)(2).

## SUMMARY[**]

### Prisoner Civil Rights

The panel affirmed the district court's ruling that California's refusal to exempt a state prisoner from its Integral Housing Policy did not violate the Religious Land Use and Institutionalized Persons Act or the First Amendment.

The plaintiff prisoner is an Aryan Christian Odinist who challenged the State's classification of him as eligible to occupy a prison cell with an individual of a different race, alleging that such a placement would interfere with his religious practice, the "warding ritual."

The panel held that the prisoner's challenge to his classification as racially eligible (allowing the prison to place him in a cell with an individual of a different race) was not moot even though he had transferred prisons because he remains in State custody, classified as racially eligible. The panel also held that the prisoner was not barred from arguing on appeal that the State improperly burdened his ability to perform the Odinist warding ritual.

The panel held that the prisoner successfully alleged a burden on his religious exercise under the Religious Land Use and Institutionalized Persons Act and the First Amendment, but the State had a compelling interest in avoiding unconstitutional racial discrimination, and

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

subjecting the prisoner to integrated celling was the only possible means of furthering that interest. The panel concluded that the prisoner failed to state a claim under the Act and the First Amendment. The panel further concluded that the district court did not abuse its discretion in denying the prisoner leave to amend.

## COUNSEL

Elliot Wong (argued), San Francisco, California, for Plaintiff-Appellant.

Kamala Harris, Attorney General of California, Jonathan L. Wolff, Senior Assistant Attorney General, Thomas S. Patterson, Supervising Deputy Attorney General, Jose A. Zelidon-Zepeda (argued), Deputy Attorney General, San Francisco, California, for Defendants-Appellees.

## OPINION

TASHIMA, Circuit Judge:

Dennis Walker is a devout racist. He is an Aryan Christian Odinist incarcerated in a California state prison. The Odinist religion forbids adherents from integrating with members of races other than their own and requires the performance of rituals that may not be conducted in the presence of non-"Aryan" individuals. Walker challenges the State's classification of him as eligible to occupy a prison cell with an individual of a different race, alleging that such a placement would interfere with his religious practice. He appeals the district court's ruling that the State's refusal to

exempt him from its Integrated Housing Policy (the "Housing Policy") did not violate the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § a2000cc *et seq.*, or the First Amendment. We have jurisdiction under 28 U.S.C. § 1291. We conclude that the State has a compelling interest in avoiding invidious racial discrimination and potential liability under the Equal Protection Clause, and the only way for the State to satisfy this interest was to reject Walker's request for an exemption from the Housing Policy. We affirm.

## I.

According to Walker, Odinism, the religion to which he adheres, calls on its  followers to preserve the purity of the Aryan race.[1]  To that end, Odinists are forbidden from interacting with individuals of other races. Seeking to follow his religious dictates, Walker requested that he be celled with an Aryan individual. The state rejected the request. Pursuant to the Housing Policy, Walker was classified as "racially eligible," allowing the prison to place him in a cell with an individual of a different race.

The Housing Policy provides for prisoners to be classified into one of five categories, including racially eligible and "restricted to own," meaning ineligible to be placed in a multi-race cell. There is a strong presumption in favor of racially eligible status. Under that policy, an inmate's race may not be a "primary determining factor" in determining his

---

[1] Although the word "Aryan" has been variously used to describe Proto-Indo-Europeans and Hindus, Walker apparently uses it to refer only to white individuals of Northern European heritage. We follow that usage in this opinion.

housing classification. Prison officials may, however, consider certain race-related factors when classifying inmates, such as the prisoner's history of perpetrating or being victimized by racial violence. A prisoner classified as racially eligible who refuses to accept a cellmate of another race is not forced to accept integration, but rather is categorized as "restricted by refusal" and subjected to disciplinary action. Following his classification as racially eligible, the prison assigned Walker a non-white cellmate and Walker refused the assignment. As discipline, the prison placed him in administrative segregation.

Walker commenced this action *pro se* against Matthew Cate, then-Secretary of the California Department of Corrections and Rehabilitation, and Kathleen Dickerson, the warden of the prison in which he was then housed (together "Defendants" or the "State").[2] He seeks damages and injunctive relief for a variety of statutory and constitutional claims, including claims under RLUIPA, and the First, Fifth, Eighth, and Fourteenth Amendments. Although inartfully drafted, the complaint alleges that the State's classification of Walker as racially eligible under the Housing Policy impermissibly abridged his religious liberty by threatening a violation of his "religious beliefs and practices."

Defendants moved to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). A magistrate judge recommended granting the motion and dismissing all claims. Still proceeding *pro se*, Walker filed objections to the magistrate judge's findings and recommendations ("F&R").

---

[2] As best as can be determined, Walker appears to have brought claims against Defendants in both their official and personal capacities, and we so construe the complaint.

In this new filing, for the first time, Walker provided additional information about his practice of Odinism. Walker asserted that as part of his religious practice he engages in a ritual known as "the spiritual circle of Odinist Warding" (the "warding ritual") to communicate with his gods. Integrated housing, according to Walker, would interfere with this ritual because the presence of a non-Aryan individual in his cell during the ritual would "pollute" the spiritual circle. Notwithstanding Walker's objections to the F&R, the district court adopted the magistrate judge's F&R in full, dismissed Walker's complaint for failure to state a claim, and denied leave to amend.

Now represented by counsel, Walker appeals the dismissal of his RLUIPA and First Amendment claims and the denial of leave to amend.

## II.

We review *de novo* a district court's dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Stone v. Travelers Corp.*, 58 F.3d 434, 436–37 (9th Cir. 1995). We review a district court's denial of leave to amend for abuse of discretion. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

## III.

The State asserts that Walker's action is moot because, since filing his complaint, Walker has been transferred to a new prison and has not alleged he is subject to integrated

celling at that facility.[3]  A case is moot "when it has 'lost its character as a present, live controversy of the kind that must exist if [the court is] to avoid advisory opinions on abstract propositions of law.'" *Oregon v. FERC*, 636 F.3d 1203, 1206 (9th Cir. 2011) (per curiam) (quoting *Hall v. Beals*, 396 U.S. 45, 48 (1969) (per curiam)).  Because "[t]he jurisdiction of federal courts depends on the existence of a 'case or controversy' under Article III of the Constitution," we must dismiss an appeal that has become moot.  *Pub. Util. Comm'n of Cal. v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996) (quoting *GTE Cal., Inc. v. FCC*, 39 F.3d 940, 945 (9th Cir. 1994)).

Our precedents elaborate on how the mootness bar applies to claims brought by prisoners subsequently transferred to new prisons.  In *Dilley v. Gunn*, a prisoner brought a constitutional claim alleging denial of access to the courts on the ground that the prison law library's policies were overly restrictive.  64 F.3d 1365, 1367 (9th Cir. 1995).  We concluded that the claim was moot because the prisoner had been transferred to another prison and did not demonstrate "a reasonable expectation that he [would be] . . . subjected again" to the suspect library policies.  *Id.* at 1368–69.  By contrast, in *Nelson v. Heiss*, we held that a prisoner's claim

---

[3] Walker asserts claims for both damages and injunctive relief, but we consider only the mootness of the injunctive claims because Defendants are immune from liability for damages.  Defendants are immune from Walker's official capacity damages claims under the Eleventh Amendment.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64–65 (1989); *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1111–12 (9th Cir. 2010).  Walker's personal capacity claims fail because Defendants plainly did not violate clearly established rights of which a reasonable person would (or should) have known, thus entitling Defendants to qualified immunity.  *See Pearson v. Callahan*, 555 U.S. 223, 232–33 (2009).

asserting his trust account had been mishandled in violation of federal law was not moot, even though the prisoner had been transferred from the prison where the alleged misconduct occurred. 271 F.3d 891, 893, 897 (9th Cir. 2001). We concluded that the claim was not moot because the policy pursuant to which the alleged violation occurred was "system wide" and one of the defendants was in charge of the policy. *Id.* at 897; *see also Jordan v. Sosa*, 654 F.3d 1012, 1028–29 (10th Cir. 2011); *Lehn v. Holmes*, 364 F.3d 862, 871–72 (7th Cir. 2004).

Reading the complaint in the light most favorable to Walker, it challenges his classification as racially eligible under the Housing Policy, which, by its terms, regulates the housing of inmates throughout the California prison system, not just in Walker's original prison. Defendant Matthew Cate was the head of the California prison system when Walker filed his complaint and was capable of providing relief.[4] Thus, Walker has satisfied both of the requirements we identified in *Nelson* for a transferred prisoner's claim to avoid mootness. Walker remains in State custody, classified as racially eligible. His challenge to that classification is not moot.

## IV.

The State next asserts that Walker should be barred from arguing on appeal that the State improperly burdened his ability to perform the Odinist warding ritual because: (1) he abandoned that argument; and (2) his complaint does not

---

[4] Matthew Cate resigned as head of the state prison system in 2012 and his successor has been substituted in his stead with respect to any official capacity claims. *See* footnote *, *supra*.

contain factual allegations sufficient to support the warding ritual theory. We discuss these related arguments in turn.

"It is a general rule that a party cannot revisit theories that it raises but abandons at summary judgment." *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1026 (9th Cir. 2009) (quoting *Davis v. City of Las Vegas*, 478 F.3d 1048, 1058 (9th Cir. 2007) (internal quotation marks omitted)). "A party abandons an issue when it has a full and fair opportunity to ventilate its views with respect to an issue and instead chooses a position that removes the issue from the case." *Id.* (quoting *BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 826 (9th Cir. 2000) (internal quotation marks omitted)).

The wellspring of our recent abandonment jurisprudence is *USA Petroleum Co. v. Atl. Richfield Co.*, 13 F.3d 1276 (9th Cir. 1992). *Richfield* was an antitrust action brought by USA Petroleum ("USA") against its competitor, Atlantic Richfield, alleging predatory pricing. *Id.* at 1277. On appeal, USA attempted to rely on a "below-cost pricing" theory of liability under § 1 of the Sherman Act, 15 U.S.C. § 1, even though it had relied on a different "below-market pricing theory" in the district court. *Id.* at 1279, 1284. We barred USA from asserting the new theory on appeal because "USA contended that below-cost pricing was an available predatory pricing theory but expressly chose not to rely upon it" in the lower court. *Id.* at 1284.

Analogizing to *Richfield*, the State argues that because Walker's complaint did not mention the warding ritual and discussed only general interference with his religion, Walker abandoned the ritual argument. We reject this analogy. *Richfield* and its progeny concerned situations in which a litigant deliberately declined to pursue an argument by taking

a position that conceded the argument or removed it from the case. *See Ramirez*, 560 F.3d at 1026; *Montero-Martinez v. Ashcroft*, 277 F.3d 1137, 1145 n.9 (9th Cir. 2002); *McMath*, 206 F.3d at 826. Here, Walker's original complaint did not mention the ritual, but it also did not allege a set of facts at odds with it. Rather, the complaint argued that integrated celling would "violate [Walker's] religious beliefs *and practices*." This language suggests that when he filed his complaint, Walker understood his claim as alleging a spectrum of interferences with his religion, including interference with ritual practice. Walker's subsequent focus on the warding ritual was not a change of theory, but rather an elaboration of his initial argument. Accordingly, Walker did not "choose a position" removing the warding ritual argument from the case or conceding it. *Id*.

The State next contends that Walker's complaint does not make out factual allegations sufficient to support his preferred legal theory on appeal. The basis of the State's argument is that Walker's complaint does not actually discuss the warding ritual. According to the State, we must reject Walker's claim and require him file a new complaint that articulates how integrated celling interferes with the ritual.

In general, we "construe liberally motion papers and pleadings filed by *pro se* inmates . . . ." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). "[I]t is sufficient that the complaint, alone or supplemented by any subsequent filings before summary judgment, provide the defendant fair notice" of the provision under which relief is sought. *Alvarez v. Hill*, 518 F.3d 1152, 1159 (9th Cir. 2008). We expect that "[r]esponsive pleadings . . . may be necessary for a pro se plaintiff to clarify his legal theories." *Id.* at 1158 (quoting

*Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989))
(emendations in original) (internal quotation marks omitted).

Given this liberal standard, we reject the State's
argument. Although Walker's complaint did not mention the
warding ritual, it specified the general theory and nucleus of
facts under which he sought relief, which was enough to give
the State fair notice. *See Alvarez*, 518 F.3d at 1159.
Walker's objection to the F&R, and now his appellate brief,
subsequently refined and clarified that broad initial claim. *Cf.
id.* at 1158. Walker's objection to the F&R, which explains
the warding ritual and its importance to the Odinist religion,
is now properly part of the record. *See* 28 U.S.C. § 636(b)(1).
Moreover, the State has not asserted that it suffered any
prejudice from Walker's failure to include all of the relevant
facts in his initial filing. We thus see no reason to require
Walker to institute a new action.[5]

## V.

We now reach to the merits of Walker's challenge:
whether his classification as racially eligible under the
Housing Policy violates RLUIPA. RLUIPA provides that
"[n]o government shall impose a substantial burden on the
religious exercise of a person residing in or confined to an
institution . . . even if the burden results from a rule of
general applicability," unless the government demonstrates
the burden is "in furtherance of a compelling government
interest" and "is the least restrictive means of furthering that
compelling governmental interest." 42 U.S.C. § 2000cc-1(a).
Enacted after the Supreme Court held unconstitutional the

---

[5] Relatedly, we discuss in Part VII, below, whether Walker should have
been granted leave to amend.

Religious Freedom and Restoration Act ("RFRA"), as applied to the states, in *City of Boerne v. Flores*, 521 U.S. 507 (1997), RLUIPA essentially reinstitutes the demanding RFRA standard of review for intrusions on religious liberty in the limited contexts of prisoners and federal land. *See Shakur v. Schriro*, 514 F.3d 878, 888 (9th Cir. 2008).

To state a claim under RLUIPA, a prisoner must show that: (1) he takes part in a "religious exercise," and (2) the State's actions have substantially burdened that exercise. *See id.* at 888–89. If the prisoner satisfies those elements, then the State must prove its actions were the least restrictive means of furthering a compelling governmental interest. *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005). We address these elements *seriatim*.

## A.

We first consider whether the warding ritual is a valid religious exercise. RLUIPA defines a religious exercise to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). The definition is intentionally broad. *See Greene v. Solano Cnty. Jail*, 513 F.3d 982, 986 (9th Cir. 2008). It covers "not only belief and profession but the performance of . . . physical acts [such as] assembling with others for a worship service [or] participating in sacramental use of bread and wine . . . ." *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (quoting *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S 872, 877 (1990) (emendations in original) (internal quotation marks omitted)).

The warding ritual plainly meets this standard. As a physical act intended to bring about communication with a

deity, the warding ritual is a prototypical religious exercise. *See Jaffree v. Wallace*, 705 F.2d 1526, 1534 (11th Cir. 1983) (quoting *Karen B. v. Treen*, 653 F.2d 897, 901 (5th Cir. 1981) (defining prayer as a "quintessential religious practice")). Although Odinism is not a mainstream faith, RLUIPA does not, and constitutionally could not, pick favorites among religions. *See Lindell v. McCallum*, 352 F.3d 1107, 1108, 1110 (7th Cir. 2003) (concluding that a follower of Odinism had stated a claim under RLUIPA). We conclude that the warding ritual constitutes a religious exercise under RLUIPA.

**B.**

The next question is whether the State's classification of Walker as racially eligible under the Housing Policy substantially burdened his practice of Odinism. To constitute a substantial burden, a limitation of religious practice "must impose a significantly great restriction or onus upon such exercise." *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004). A substantial burden need not actually force a litigant to change his practices; a violation may occur "where the state . . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Warsoldier*, 418 F.3d at 995 (quoting *Thomas v. Review Bd. of the Ind. Emp't Sec. Div.*, 450 U.S. 707, 717–18 (1981) (emendations in original) (internal quotation marks omitted)).

Our holding in *Warsoldier* is illuminating. In that case, the prisoner-plaintiff, a Native American, refused to conform to a prison restriction on hair length on the ground that doing so would violate his religious beliefs. *Id.* at 991–92. After he refused, he was "(1) . . . confined to his cell; (2) had

additional duty hours imposed on him; (3) [was] reclassified into a workgroup where inmates do not receive time credits or as many privileges as others working in a higher workgroup; (4) lost his phone call privileges; [and] (5) [was] expelled from print shop and landscaping classes," among other punishments. *Id.* at 996. Rejecting the argument that the prisoner's religious practice was not substantially burdened because he had not been physically forced to cut his hair, we held that the grooming policy constituted a significant burden because it put "significant pressure" on him to conform. *Id.*

Walker's asserted burden is closely analogous to the one at issue in *Warsoldier*. Like the plaintiff in *Warsoldier*, Walker faced a prison regulation impairing his ability to conform to a religious ritual. *See Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015) (holding that a threat of "serious disciplinary action" constituted pressure to conform). Taking Walker at his word, as we must at this stage, a non-white cellmate would make it impossible to perform the warding ritual in his cell. As was the case in *Warsoldier*, Walker accepted prison discipline rather than the restriction on his religious practice. The punishments he received – a rules violation report and placement in administrative segregation – plainly placed him under pressure to conform. *See Warsoldier*, 418 F.3d at 996.[6]

---

[6] The State argues that preventing Walker from performing the warding ritual in his cell did not substantially burden his religious exercise because Walker had alternative means of gaining spiritual fulfillment – namely, conducting the ritual outside his cell. We reject this argument because the record does not disclose whether it is possible for Walker to perform the ritual outside his personal space, and presuming that would be contrary to our obligation to construe *pro se* § 1983 claims liberally on a motion to dismiss. *Thomas*, 611 F.3d at 1150.

Thus, Walker has shown that his classification as racially eligible substantially burdens his religious exercise.

## C.

Because Walker has shown that the racially eligible classification under the Housing Policy substantially burdens his religious exercise, we must assess whether the State's refusal to exempt Walker from the Housing Policy's classification scheme was the least restrictive means of furthering a compelling governmental interest. Our inquiry here is analogous to the application of strict scrutiny. *See Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1066 (9th Cir. 2011); *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1171 (9th Cir. 2011).

At the outset, we note that many possible justifications might exist for the State's refusal to exempt Walker from integrated celling. *See, e.g.*, *Cutter*, 544 U.S. at 723 n.11 (suggesting that a state could have a compelling interest in "not facilitating inflammatory racist activity that could imperil prison security and order"). However, under this prong of RLUIPA, the State bears the burden of persuasion. *Warsoldier*, 418 F.3d at 995. We may not rely on an interest the State has failed to articulate. *See Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 981 (9th Cir. 2006); *Krislov v. Rednour*, 226 F.3d 851, 866 n.7 (7th Cir. 2000). Here, the State has asserted only a single compelling interest: complying with constitutional restrictions on race-conscious action. Thus, we evaluate only that purported interest.

According to the State, subjecting Walker to the integrated celling policy and denying him an exemption is necessary to comply with constitutional restrictions on racial segregation in prisons. The State points us to *Johnson v. California*, 543 U.S. 499 (2005), in which the Supreme Court considered an equal protection challenge to California's previous race-conscious celling policy and concluded that because the policy included express racial classifications, strict scrutiny was required.[7]   *Id.* at 508–09.   The State contends that exempting Walker from the current policy, which was developed in response to *Johnson*, would undermine the policy's efficacy and potentially violate the equal protection rights of non-white inmates.

Compliance with the Constitution can be a compelling state interest.  *See Widmar v. Vincent*, 454 U.S. 263, 275 (1981) ("We agree that the interest of the [defendant] in complying with its constitutional obligations may be characterized as compelling.").[8]

Our precedents, however, are less clear on how certain a constitutional violation must be to justify actions aimed at avoiding a potential breach.  The Supreme Court in *Vera* explained that compliance with the Voting Rights Act

---

[7] Rather than make the determination itself whether California's then-classification policy passed muster under strict scrutiny, the Court remanded for the lower courts to make that determination. *See id.* at 515.

[8] Adherence to a sub-constitutional restriction also may be compelling. *See Bush v. Vera*, 517 U.S. 952, 977 (1996) (assuming without deciding that compliance with the Voting Rights Act may be a compelling interest justifying race-conscious state action); *see also KDM ex rel. WJM v. Reedsport School Dist.*, 196 F.3d 1046, 1052 (9th Cir. 1999) (concluding that compliance with a state constitution is a legitimate state interest).

constitutes a compelling interest where there is a "strong basis in evidence" that state action is necessary to avoid a violation. *Vera*, 517 U.S. at 977; *see also Ricci v. DeStefano*, 557 U.S. 557, 563 (2009). Most courts to conclude that compliance with the Constitution is a compelling interest have not dwelled on the issue. *See, e.g.*, *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 395 (1993); *Child Evangelism Fellowship of Minn. v. Minneapolis Special Sch. Dist. No. 1*, 690 F.3d 996, 1002–03 (8th Cir. 2012).

We need not determine the exact probability of constitutional harm necessary to give the State a compelling interest in curative action. Here, the State has shown more than merely a good faith belief that exempting Walker would be constitutionally suspect; there is an objectively strong legal basis for believing that is the case. Were the State to begin exempting prisoners from race-neutral celling on the basis of their religious beliefs, its celling system would not be race-neutral. The question would become, under the strict scrutiny inquiry mandated by *Johnson*, whether the State would have a compelling justification for race-conscious action. Courts generally accept racial segregation in prisons only when motivated by concerns about prisoner safety. *See Johnson*, 543 U.S. at 514; *Ochs v. Thalacker*, 90 F.3d 293, 296–97 (8th Cir. 1996); *Harris v. Greer*, 750 F.2d 617, 619 (7th Cir. 1984). Although we make no conclusive determination as to the constitutional effect of racially-based exemptions from the Housing Policy, the State has shown a sufficient likelihood of liability to give it a compelling interest in refusing Walker's request for an exemption.

Because we hold that the State has a compelling interest in complying with *Johnson*, we must also conclude that

denying Walker's requested exemption was the least restrictive means of furthering a compelling state interest. The gravamen of Walker's complaint is that the State's failure to offer him an exemption from race-neutral celling constitutes a violation of RLUIPA. But granting that exemption would be race-conscious action implicating the Equal Protection Clause, so the only way to avert potential constitutional liability was to deny the requested exemption. Anything else would have introduced a non-race-neutral element into the celling policy, thereby raising the specter of a credible equal protection claim brought by non-white prisoners. There is thus an "exact fit" between the potential harm and the challenged state action. *Walker v. City of Mesquite*, 169 F.3d 973, 982 (5th Cir. 1999).

Walker argues that the State fails the least restrictive means test because it did not "demonstrate[] that it [had] actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Warsoldier*, 418 F.3d at 999. Although the government bears the burden of proof to show its practice is the least-restrictive means, it is under no obligation to dream up alternatives that the plaintiff himself has not proposed. *See United States v. Wilgus*, 638 F.3d 1274, 1289 (10th Cir. 2011) (holding that, in a least restrictive means inquiry, "the government's burden is two-fold: it must support its choice of regulation, and it must refute the alternative schemes *offered by the challenger*, but it must do both through the evidence presented in the record" (emphasis added)).

Here, Walker has consistently demanded only one form of relief: an exemption from the celling policy. As observed earlier, this relief would require the State to engage in constitutionally suspect racial divisions of prisoners. Of

course, it is possible to imagine how the State might have maintained its race-neutral celling policy and offered an accommodation to Walker – for example, by giving him time outside his cell to perform the warding ritual by himself. But Walker never asked for such relief, nor has he given any indication that he would accept anything short of being assigned a white cellmate. The State has no additional obligation under RLUIPA independently to research and propose every possible way of mitigating that practice's negative effects. *See Vera*, 517 U.S. at 977 ("state actors should not be 'trapped between competing hazards of liability' by the imposition of unattainable requirements under the rubric of strict scrutiny") (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 291 (1986) (O'Connor, J., concurring in part and concurring in the judgment)). If Walker wants time outside his cell to perform the ritual, he needs to ask for it. If the State were to refuse him, that might be the basis for a separate RLUIPA challenge, but it does not bear on the challenge here, which is to the application of the Housing Policy to him without an exemption.

We conclude that the State's actions were the least restrictive means of furthering a compelling interest. Walker has not stated a claim under RLUIPA.

## VI.

Walker also contends that the state's racially eligible classification infringes on his rights under the Free Exercise Clause of the First Amendment, applicable to the states through the Fourteenth Amendment. In general, a plaintiff will have stated a free exercise claim if: (1) "the claimant's proffered belief [is] sincerely held"; and (2) "the claim [is] rooted in religious belief, not in purely secular philosophical

concerns." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (internal quotation marks and citation omitted). Although prisoners enjoy First Amendment protection, their rights under the Free Exercise Clause are limited by "institutional objectives and by the loss of freedom concomitant with incarceration." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). To that end, a prisoner's Free Exercise Clause claim will fail if the State shows that the challenged action is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see Ashelman v. Wawrzaszek*, 111 F.3d 674, 677–78 (9th Cir. 2007).

Walker easily satisfies the threshold requirements for a Free Exercise Clause claim because he has alleged a sincerely held religious belief, so his Free Exercise Clause challenge thus turns on whether the State's interest in compliance with the Equal Protection Clause is reasonably related to legitimate penological interests.

Potential legal liability may constitute a legitimate penological interest under *Turner*. *See Acorn Inv., Inc. v. City of Seattle*, 887 F.2d 219, 226 (9th Cir. 1989) (indicating that compliance with an ordinance constitutes a "legitimate interest"); *Victoria W. v. Larpenter*, 369 F.3d 475, 486 (5th Cir. 2004) (noting that the threat of legal liability stemming from prison escapes gave the state a legitimate penological interest in restricting prisoner access to off-site medical care); *cf. Goodwin v. Turner*, 908 F.2d 1395, 1399 n.7 (8th Cir. 1990) (holding that the state did not have a legitimate penological interest stemming from potential legal liability, in part, because the grounds for liability were "far-fetched"). As we discuss in Part V.C, there is a reasonable likelihood that exempting Walker from integrated celling would expose

the State to liability in an equal protection suit brought by other inmates. Liability is not "far fetched." *Goodwin*, 908 F.3d at 1399 n.7.

The traditional factors we use to weigh prisoners' Free Exercise Clause claims also weigh against Walker. In *Turner*, the Supreme Court articulated four factors that bear on whether a legitimate penological interest exists: (1) whether there is a valid, rational connection between a state interest and the prison regulation; (2) whether prisoners have an alternative method of engaging in religious practice; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates; and (4) the absence of ready alternatives to the challenged regulation. *Turner*, 482 U.S. at 89–90.

Three of these factors favor the State. First, given the real threat of liability and the high-profile nature of California's celling procedures post-*Johnson*, the connection between the state's interest in avoiding liability and denying Walker's requested relief is substantial. Second, exempting Odinists such as Walker from the integrated celling policy but not providing similar exemptions to inmates of other races and religions might exacerbate tensions within California prisons and endanger guards. Finally, as discussed in Part V.C, there are no alternatives to denying Walker's request that would mitigate the liability concern. We hold that Walker has failed to state a claim under the First Amendment.

## VII.

Last, Walker contends that he should be granted leave to amend his complaint. We review a district court's denial of leave to amend for abuse of discretion. *Lopez*, 203 F.3d at

1130.   The district court's discretion on whether to grant
leave, however, "must be guided by the underlying purpose
of Rule 15 to facilitate decision on the merits, rather than on
the pleadings or technicalities." *United States v. Webb*,
655 F.2d 977, 979 (9th Cir. 1981).   A *pro se* litigant is
entitled to an opportunity to amend "[u]nless it is absolutely
clear that no amendment can cure the defect." *Lucas v. Dep't
of Corr*., 66 F.3d 245, 248 (9th Cir. 1995).   Here, the district
court did not abuse its discretion in denying leave to amend
because no amendment would cure the deficiency in Walker's
complaint, given his insistence on a wholesale exemption
from the Housing Policy.   The threat of equal protection
liability that requires us to reject Walker's RLUIPA claim is
rooted in legal precedent.   No facts that Walker could adduce
would mitigate the concern.   Although Walker might have a
colorable RLUIPA claim if the State refused to accommodate
the warding ritual by giving him time alone and a place to
perform it, that claim would be fundamentally different from
the one here, *i.e.*, it is not tied to the Housing Policy.

## VIII.

   Walker successfully alleged a burden on his religious
exercise under RLUIPA and the First Amendment, but the
State has a compelling interest in avoiding unconstitutional
racial discrimination, and subjecting Walker to integrated
celling is the only possible means of furthering that interest.
Accordingly, we conclude that Walker has failed to state
claims under RLUIPA and the First Amendment; we further
conclude that the district court did not abuse its discretion in
denying leave to amend.

The judgment of the district court is

**AFFIRMED.**