**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SHAYKH MUHAMMAD ABDUL BIN
TALAL AL SAUD, AKA Shaykh
Muhammad Abdul Aziz Khalid Bin
Talal Alsaud,
                    *Plaintiff-Appellant*,

v.

PANNAN DAYS, Deputy Warden at
SMU II Eyman Florence; STEPHEN
MORRIS, Warden, Warden at
Complex Eyman; CHARLES L. RYAN,
Director at Arizona State Prison;
UNKNOWN PARTY, Named as
"NROD; Northern Regional
Operation Director" at Arizona State
Prison; THOMAS, Sergeant;
BURCHETT, COII; ARNALD, COII;
PLANCARTE, COII,
                    *Defendants-Appellees.*

No. 21-15089

D.C. No.
2:19-cv-04863-
SPL

OPINION

Appeal from the United States District Court
for the District of Arizona
Steven Paul Logan, District Judge, Presiding

Argued and Submitted April 12, 2022
San Francisco, California

Filed June 8, 2022

Before:  RICHARD R. CLIFTON and MILAN D. SMITH,
JR., Circuit Judges, and CHRISTINA REISS,[*]
District Judge.

Opinion by Judge Milan D. Smith, Jr.

---

**SUMMARY**[**]

---

**Prisoner Civil Rights**

The panel affirmed the district court's judgment on the
pleadings in an action brought by Shaykh Muhammad Al
Saud, a Muslim inmate who alleged that he is unable to pray
five times a day, as the Qur'an requires, because he is housed
with people who harass him as he prays; and who had asked
the prison to accommodate his religious practice by housing
him exclusively with other prisoners based on their religious
beliefs and practices.

Al Saud brought suit pursuant to the Religious Land Use
and Institutionalized Persons Act (RLUIPA), 42 U.S.C.
§ 2000cc *et seq.*, the Free Exercise Clause of the First
Amendment, and Arizona state law.

---

[*] The Honorable Christina Reiss, United States District Judge for the
District of Vermont, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It
has been prepared by court staff for the convenience of the reader.

The panel held that Al Saud's RLUIPA claim failed because denying his request to be housed only with Muslims was the least restrictive means of furthering a compelling governmental interest. The panel concluded that the outcome of this case was largely controlled by *Walker v. Beard*, 789 F.3d 1125 (9th Cir. 2015), which held that a prison could deny a prisoner's religious accommodation when he sought to be housed with only white people. Because both race and religion are suspect classes, the likelihood that equal protection liability would flow from housing prisoners based on religion was substantially identical to the likelihood of liability for housing prisoners based on race and, therefore, was sufficient to serve as a compelling interest. Defendants had no alternative but to deny Al Saud's request because he requested only one thing: to be housed exclusively with Muslims.

The panel held that defendants did not violate Al Saud's First Amendment free exercise rights because denying Al Saud's request was also reasonably related to a legitimate penological interest—avoiding the potential legal liability of housing inmates based on their religious beliefs and practices. Denying the request was rationally related to avoiding liability because by denying Al Saud's requested accommodation, the Arizona Department of Corrections Rehabilitation and Reentry completely eliminated its risk of litigation from other prisoners based on that claim.

## COUNSEL

William Fernholz (argued) and Susan Yorke, Supervising Attorneys; Chelsea Bray (argued) and Reginaldo Valdez (argued), Certified Law Students; Ninth Circuit Practicum, Berkeley, California; for Plaintiff-Appellant.

Daniel P. Schaack (argued), Assistant Attorney General; Mark Brnovich, Attorney General; Office of the Attorney General, Phoenix, Arizona; Michael E. Gottfried and Jason D. Corley, Assistant Attorneys General; Office of the Attorney General, Tucson, Arizona; for Defendants-Appellees.

**OPINION**

M. SMITH, Circuit Judge:

Shaykh Muhammad Al Saud is Muslim, and is incarcerated at the Arizona State Prison Complex-Eyman. He claims that he is unable to pray five times a day, as the Qur'an requires, because he is housed with people who harass him as he prays. He alleges that his faith requires that he live only with other Muslims. He asked the prison to accommodate his religious practice by housing him exclusively with other Muslims. In order to do so, the prison would have to classify and house other prisoners based on their religious beliefs and practices. The Arizona Department of Corrections Rehabilitation and Reentry (ADCRR) did not respond to Al Saud's request.

Al Saud brought suit against the ADCRR and prison officials pursuant to the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq.*, the Free Exercise Clause of the First Amendment, and Ariz. Rev. Stat. § 41-1493.01. The district court issued a judgment on the pleadings for defendants, concluding that the infringement on Al Saud's religious practice was justified because the state's action was narrowly tailored to address the compelling interest of

avoiding equal protection liability for classifying other prisoners based on their religion.

We conclude that the outcome of this case is largely controlled by *Walker v. Beard*, 789 F.3d 1125 (9th Cir. 2015), in which we held that a prison could deny a prisoner's religious accommodation when he sought to be housed with only white people. We affirm the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

Although Al Saud is now represented by pro bono counsel, he handwrote his complaint. He alleges that his sincerely held religious beliefs require that he "be housed with [his] own Muslim believers in [their] faith." He claims to be housed with:

> racists Nazi and Racist Chicanos which violates the sacredness of my 5 daily salats = prayers and cleanlynest of area of prayer and my faith demands all believers to associate with our own believers an not associate with anyone thats unclean and hostile towards our Islamic faith and these racist Chicanos and White Nazi supremacy inmates all process hatred towards Muslims.

(Misspellings in original). He alleges that "Infidels cause the prayer area an house be unclean an not pure with their evil hate and practise that goes against Allah" and that these "racist hateful inmates [have] displayed very hostile behavior towards Muslims." (Misspellings in original). He claims an injury of "sleepless nights and effect of my prayers due uncleanlynest of present infidel . . . One don't feel really connected with Allah like I do with other Muslim cellmates."

(Misspellings in original). He does not allege that he has been physically harmed or is in any physical danger.

Al Saud filed a grievance with the prison, requesting to be housed only with other Muslims. Defendants never responded. Al Saud alleges that the state had no penological reason for not housing him with other Muslims.

The district court required defendants to answer the complaint, and defendants moved for judgment on the pleadings. The district court granted judgment on the pleadings for the defendants. Al Saud timely filed this appeal.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review a decision on a motion for judgment on the pleadings de novo. *Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1246 (9th Cir. 2017). We view the allegations in the complaint as true and in the light most favorable to the plaintiff. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). We also liberally construe pro se pleadings. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

## ANALYSIS

### I.  RLUIPA Claim

RLUIPA protects "institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). The statute provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to

an institution . . . even if the burden results from a rule of general applicability," unless the government shows that the burden is "in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). In other words, "[t]o state a claim under RLUIPA, a prisoner must show that: (1) he takes part in a 'religious exercise,' and (2) the State's actions have substantially burdened that exercise. If the prisoner satisfies those elements, then the State must prove its actions were the least restrictive means of furthering a compelling governmental interest." *Walker*, 789 F.3d at 1134 (internal citation omitted). The second half of this inquiry is analogous to strict scrutiny. *Id.* at 1136. Only injunctive relief, not monetary damages, is available pursuant to RLUIPA, and the claim must be against defendants in their official capacities. *Sossamon v. Texas*, 563 U.S. 277, 287–88 (2011).

The parties agree that Al Saud's request concerns a religious exercise and that the state's actions substantially burden that exercise. The issue before us, then, is whether defendants' conduct is the least restrictive means of furthering a compelling governmental interest.

### a. Compelling Interest

Defendants contend that they have a compelling interest in avoiding the equal protection liability that comes with classifying and housing prisoners based on their religious beliefs and practices. In order to house Al Saud with only Muslims, defendants would necessarily have to classify and house other prisoners based on their religious beliefs and practices. The Equal Protection Clause prohibits the government from classifying people based on suspect classes, unless the classification is narrowly tailored to

satisfy a compelling governmental interest (i.e., the government's action passes strict scrutiny). *See Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 457–58 (1988). Religion is a suspect class. *See City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976). Accordingly, housing prisoners based on their religious beliefs and practices would result in classifying them based on membership in a suspect class, and would violate the Equal Protection Clause unless the classification satisfies strict scrutiny.

Applying those principles to this case, we need to determine if the state has a compelling interest in classifying prisoners based on their religious beliefs and practices. Were the state to so classify prisoners, it would be doing so to accommodate Al Saud's religious beliefs and practices. The compelling interest justifying the classification, therefore, would be to avoid RLUIPA liability for refusing to accommodate Al Saud's religious practice. But is avoiding RLUIPA liability a compelling interest? It could be, if there actually is RLUIPA liability in refusing to house Al Saud with exclusively Muslims because that refusal is not narrowly tailored to a compelling interest.

These considerations lead us back to the question with which we began. The analysis is circular. To know if there is a RLUIPA violation, we must know if avoiding equal protection liability is a valid compelling interest, but in order for us to know if avoiding equal protection liability is a valid compelling interest, we must know if avoiding RLUIPA liability is a valid compelling interest.

Fortunately, there is an offramp. Defendants are correct that complying with the Constitution, and statutes, can be a compelling state interest. *See Widmar v. Vincent*, 454 U.S. 263, 275 (1981); *Walker*, 789 F.3d at 1136. "Our precedents, however, are less clear on how certain a

constitutional violation must be to justify actions aimed at avoiding a potential breach." *Walker*, 789 F.3d at 1136. Al Saud argues that the risk of violating the Equal Protection Clause here is too speculative to be a compelling interest. The circularity in the equal protection analysis reveals that the risk of a violation is at least somewhat speculative. Defendants, on the other hand, rely on *Walker v. Beard*, 789 F.3d 1125 (9th Cir. 2015), a case also decided on the pleadings, to argue that the potential equal protection violation is sufficiently concrete to be a compelling interest. That case also examined RLUIPA and Free Exercise Clause claims when a white California prisoner challenged being housed with people who are not white based on religious grounds. We held that the California prison's interest in avoiding liability for potential equal protection claims for housing prisoners based on race justified not accommodating the plaintiff and the infringement on his religious liberty.

*Walker* controls the outcome in this case. In *Walker,* we noted that we need not determine the "exact probability of constitutional harm necessary to give the State a compelling interest." 789 F.3d at 1137. Avoiding equal protection liability was a compelling interest because the state showed "more than merely a good faith belief that exempting Walker would be constitutionally suspect." *Id.* The court decided that "the State has shown a sufficient likelihood of liability to give it a compelling interest in refusing Walker's request for an exemption." *Id.* We did not evaluate whether accommodating a religious practice is itself a compelling interest justifying racial segregation, but rather made "no conclusive determination as to the constitutional effect of racially-based exemptions from the Housing Policy." *Id.*

Likewise, we do not need to conclusively decide here if housing prisoners based on religion would lead to an equal protection violation. We need only decide if there is "more than merely a good faith belief that [accommodating Al Saud] would be constitutionally suspect." *Id.* In *Walker*, we relied on *Johnson v. California*, 543 U.S. 499 (2005) to reach our conclusion. The Supreme Court in *Johnson* held that an equal protection challenge to California's race-conscious prison housing policy should be subject to strict scrutiny but remanded the case to the district court to undertake that analysis. *Id.* at 515.

Here, defendants have also shown more than a good faith belief that housing prisoners based on their religion would be constitutionally suspect. As we noted above, there is clearly a likelihood of liability. Because both race and religion are suspect classes, the likelihood that equal protection liability would flow from housing prisoners based on religion is substantially identical to the likelihood of liability for housing prisoners based on race and, therefore, is sufficient to serve as a compelling interest.

Al Saud contends that a state's interest is compelling only when it is not legally speculative, and it has a strong basis in the evidence. He cites *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1881–82 (2021) and *Bush v. Vera*, 517 U.S. 952, 977 (1996) for this proposition.

In *Fulton*, the City of Philadelphia would not contract with a foster care agency that refused to certify same-sex couples as foster parents. 141 S. Ct. at 1874. Philadelphia justified this action with a compelling interest in avoiding litigation for violating anti-discrimination law, but the Supreme Court concluded that the risk of litigation was too speculative to be a compelling state interest. *Id.* at 1881–82. Here, housing Al Saud with only Muslims would require

defendants to actively and directly engage in religious classification, thus exposing them to liability. By contrast, the City of Philadelphia's risk was particularly speculative because the State of Pennsylvania, not the city, delegated the authority to select foster parents to the agency and, therefore, the city's liability was decreased. *Id.* at 1882. The litigation and the state's interest in avoiding it is considerably less speculative in this case.

In *Bush v. Vera*, the Supreme Court examined racial gerrymandering. In discussing narrow tailoring, not compelling interests, the Court stated that strict scrutiny requires a strong basis in the evidence. 517 U.S. at 978. Al Saud asks us to extend this rule to our compelling interest analysis as well. In other words, he argues that there must be an evidentiary basis for the government's compelling interest, which, he asserts, requires discovery. However, taking the facts in the complaint as true, as we must, we see no open questions of material fact that would change the outcome of this appeal and no need for discovery.

Al Saud tries to distinguish *Walker* on the basis that Walker had not alleged a concern for his personal safety, but neither has Al Saud made such an allegation. The Supreme Court in *Johnson* agreed that safety is a compelling interest that justifies the use of race in housing when the use is narrowly tailored. 543 U.S. at 514. ADCRR policy provides an exception that allows consideration of race when safety is at issue. However, Al Saud did not allege in his complaint that he had experienced any physical harm or fears any danger to his physical safety. Al Saud brought a RLUIPA claim alleging an infringement into his religious practice, not an Eighth Amendment or other claim, alleging unsafe prison conditions. Both this case and *Walker* address religious accommodations, not accommodations for personal safety.

Al Saud also attempts to narrow *Walker* by claiming differences between race and religion in the equal protection analysis. However, both race and religion are suspect classes, *Dukes*, 427 U.S. at 303, both are subject to strict scrutiny, and both require that the state's action be narrowly tailored to a compelling interest. *Id.* Further, the state does not need to demonstrate that a definite equal protection violation would occur if it satisfied Al Saud's demand, only a likely one, and it has done so here.

Al Saud makes several additional arguments that are without merit. First, he argues that we should look to the Establishment Clause, not the Equal Protection Clause to analyze accommodations and exemptions. This argument is misplaced because, in this RLUIPA claim, we perform an equal protection analysis only to evaluate the government's stated compelling interest, which is avoiding an equal protection violation. The Establishment Clause is not at issue.

In another argument, Al Saud cites to *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 66 (2020) to argue that there would be no equal protection violation if defendants were to house prisoners based on religion. In that case, the Supreme Court found a likelihood of success on the merits of a free exercise claim when New York had an exception to COVID-19 restrictions for acupuncture services, campgrounds, and other secular facilities, but not for houses of worship. In evaluating an application for injunctive relief pending appellate review, the Court found the restrictions were not neutral pursuant to *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993) because they singled out houses of worship for especially harsh treatment as compared to secular spaces. Because the restrictions were not neutral, they triggered

strict scrutiny. Although the state had a compelling interest in stopping the spread of COVID-19, the Court found that the regulation was not narrowly tailored to satisfy that interest.

Al Saud thus tries to add a free exercise component to our equal protection analysis, but *Roman Catholic Diocese of Brooklyn* does not apply here. He argues that religion-based housing would not violate equal protection because to not house prisoners based on religion would be to treat religion more harshly than other classes. The harsh treatment, he says, stems from defendants having an explicit exception to their race-neutral housing policy when an inmate is deemed unsafe because of his race, but no exception to the religion-neutral housing policy for inmate safety. If the prison's housing policy were not neutral toward religion, under *Lukumi*, the policy would violate free exercise unless it passed strict scrutiny. That free exercise analysis, however, is distinct from the question of whether classifying prisoners based on religion violates their equal protection rights. Further, as previously noted, Al Saud is not requesting a change based on his personal safety. He is requesting an accommodation for his religious beliefs and practices. There is no unequal treatment here. If he were requesting a move to accommodate his religion based on race, the request would also be denied. That is *Walker* exactly. There is more than a good faith basis to believe that an equal protection challenge would be successful and, therefore, defendants have presented a compelling interest. That is the dispositive conclusion.

### b. Narrow Tailoring

To prevail on a RLUIPA claim, in addition to showing that it has a compelling interest, the government must also show that its action was the least restrictive means available

to further that compelling interest. *Walker*, 789 F.3d at 1137. Defendants must show that they "actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Warsoldier v. Woodford*, 418 F.3d 989, 999 (9th Cir. 2005). "Where a prisoner challenges their justifications, prison officials must set forth detailed evidence, tailored to the situation before the court, that identifies the failings in [any] alternatives advanced by the prisoner. In some cases, this showing might call for an evidentiary hearing." *May v. Baldwin*, 109 F.3d 557, 564–65 (9th Cir. 1997).

In *Walker*, we determined that denying the plaintiff's request to be housed with only white people was the least restrictive means. We said:

> The gravamen of Walker's complaint is that the State's failure to offer him an exemption from race-neutral celling constitutes a violation of RLUIPA. But granting that exemption would be race-conscious action implicating the Equal Protection Clause, so the only way to avert potential constitutional liability was to deny the requested exemption. Anything else would have introduced a non-race-neutral element into the celling policy, thereby raising the specter of a credible equal protection claim brought by non-white prisoners. There is thus an 'exact fit' between the potential harm and the challenged state action.

789 F.3d at 1137 (citation omitted). In his complaint, Walker alleged that the state failing to exempt him from race-neutral housing violated RLUIPA. The only choice the

state had was to grant or deny the exemption.  Granting it would have implicated equal protection principles, so the state had no other choice but to deny the accommodation. We found not only that the denial was narrowly tailored but that it was an exact fit.  Here, the analysis is the same. Defendants had no alternative but to deny Al Saud's request, because he requested only one thing: to be housed exclusively with Muslims.

Like Al Saud, Walker also argued that the state failed to consider less restrictive alternatives.  However, because Walker asked only for segregated housing, the state had "no additional obligation under RLUIPA independently to research and propose every possible way of mitigating that practice's negative effects." *Id.*  We concluded that "[i]f Walker wants time outside his cell to perform [his religious practice], he needs to ask for it. If the State were to refuse him, that might be the basis for a separate RLUIPA challenge, but it does not bear on the challenge here, which is to the application of the Housing Policy to him without an exemption." *Id.* at 1138.  Similarly here, if Al Saud wanted an accommodation besides religion-based housing, he should have asked for it.  Defendants' housing regulations take inmate conflicts into account, and if other inmates threatened or harmed Al Saud based on his religious practices, he should have asked the prison to take effective measures to protect his physical safety, rather than seeking the broad corrective measure of being housed with only Muslims.

## II.  Free Exercise Claim

Prisoners have First Amendment protection, but their rights under the Free Exercise Clause are necessarily limited by "institutional objectives and by the loss of freedom concomitant with incarceration." *Hartmann v. Cal. Dep't of*

*Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). To state a free exercise claim in the prison context: "(1) the claimant's proffered belief [must be] sincerely held; and (2) the claim [must be] rooted in religious belief, not in purely secular philosophical concerns." *Walker*, 789 F.3d at 1138 (cleaned up). However, "a prisoner's Free Exercise Clause claim will fail if the state shows that the challenged action is reasonably related to legitimate penological interests." *Id.* (citation omitted).

In *Turner v. Safley*, 482 U.S. 78, 89 (1987), the Supreme Court laid out four factors to be considered when determining whether a legitimate penological interest is reasonably related to a challenged action: "(1) whether there is a valid, rational connection between a state interest and the prison regulation; (2) whether prisoners have an alternative method of engaging in religious practice; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates; and (4) the absence of ready alternatives to the challenged regulation." *Walker*, 789 F.3d at 1138–39 (citing *Turner*, 482 U.S. at 89–90).

The district court concluded that Al Saud proffered a sincerely held religious belief and that the claim was rooted in religious belief. No one disputes those findings on appeal. Thus, we turn to the four *Turner* factors to examine if there is a legitimate penological interest reasonably related to the challenged action.

On appeal, Al Saud contends two ways in which ADCRR has violated his right to free exercise, namely: not responding to his request for religious accommodations and not considering the hostility he experienced based on his Muslim faith in making his housing assignment.

*Walker* also controls the outcome of Al Saud's free exercise claim. Defendants' legitimate penological interest is the potential legal liability of housing inmates based on their religious beliefs and practices. *Walker* held that "[p]otential legal liability may constitute a legitimate penological interest," and we have already concluded that such a potential liability exists here. 789 F.3d at 1138. Accordingly, the state has a legitimate penological interest.

Looking to the *Turner* factors to determine whether a legitimate penological interests is reasonably related to the challenged action, three of the four factors weigh in defendants' favor. Although *Turner* can require a fact-intensive inquiry, here the pleadings allege facts that compel our ruling for the government. *See Ward v. Walsh*, 1 F.3d 873, 879 (9th Cir. 1993); *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 783 n. 1 (9th Cir. 1997).

On the first factor, there is a valid, rational connection between denying Al Saud's religion-based housing request and avoiding equal protection liability, given the likelihood of a violation if the accommodation were granted. *See Walker*, 789 F.3d at 1139. Denying the request is rationally related to avoiding liability because by denying the accommodation ADCRR completely eliminates its risk of litigation from other prisoners based on that claim. This factor weighs in favor of the defendants.

For the second factor, as pled, Al Saud did not have an alternative method of engaging in his religious practice where he was housed. Al Saud alleged that he had no viable way to pray where he was housed. This factor weighs in Al Saud's favor.

The third factor is the impact on guards and inmates of housing inmates based on their religious beliefs and

practices. The district court noted that failing to provide similar accommodations to other prisoners "might exacerbate tensions within Arizona's prisons and endanger guards and other prisoners." We agree that the accommodation could cause tension in the prison and have an impact on guards and other inmates.

Finally, as discussed, there are no alternative means to denying Al Saud's request that would mitigate defendants' equal protection liability concerns.

## CONCLUSION

We affirm the district court's order granting judgment on the pleadings to defendants. Al Saud's RLUIPA claim fails because denying his request to be housed only with Muslims was the least restrictive means of furthering a compelling governmental interest. Defendants did not violate Al Saud's free exercise rights because denying Al Saud's request was also reasonably related to a legitimate penological interest.[1]

**AFFIRMED.**

---

[1] Defendants also argued to the district court that qualified immunity protects the officials in their individual capacities from this suit. The district court decided the motion for judgment on the pleadings on the merits and did not rule on qualified immunity. Because we also affirm on the merits of the claims, we do not analyze the qualified immunity defense.