**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FEB 24 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JESSE WASHINGTON, | No. 23-55296 |
| Plaintiff-Appellant, | D.C. No. 2:21-cv-04502-DOC-JEM |
| v. | |
| J. GASTELO; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Submitted February 24, 2025**
San Francisco, California

Before: FRIEDLAND, BENNETT, and BADE, Circuit Judges.

Pro se Plaintiff-Appellant Jesse Washington, while incarcerated at the

California Men's Colony ("CMC") in San Luis Obispo, California, sued CMC

Warden J. Gastelo, Community Resource Manager J. Bonnifield, and Chaplain D.

Gottesfeld over lapses in Islamic religious services following Imam E. Rasheed's

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

departure from CMC. Washington alleges that Defendants repeatedly failed to make prison staff available to supervise Friday Jumu'ah prayer services and Tuesday and Thursday Ta'leem study groups at the CMC-East Interfaith Chapel, depriving Washington of opportunities to practice "essential Tenets of the Islamic Faith" for a period from 2019 to 2020.[1] Although Defendant Gottesfeld sometimes stepped in to supervise Jumu'ah prayer services during this period, Washington alleges that Defendants denied his requests for regular staff supervision of inmate-led services at the chapel until a new imam was hired. Washington brought claims under 42 U.S.C. § 1983 for violating his First Amendment free exercise and Fourteenth Amendment equal protection rights. The district court dismissed the action without leave to amend. We have jurisdiction under 28 U.S.C. § 1291. We review de novo a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[2] *Walker v. Beard*, 789 F.3d 1125, 1131 (9th Cir. 2015). "We review the

---

[1] Washington alleges that before resigning in or around August 2019, Imam Rasheed established the weekly services "to ensure that all Muslim Inmates were receiving . . . the essential Tenets of the Islamic Faith." To the extent that Washington bases his claims on services that he missed *before* Imam Rasheed's departure, Washington fails to allege any conduct by Defendants that could serve as a predicate for liability under 42 U.S.C. § 1983. *See Gilbrook v. City of Westminster*, 177 F.3d 839, 854 (9th Cir. 1999) (explaining that a predicate for liability under § 1983 is that the defendant caused the alleged injury). Washington does not challenge the suspension of all religious services starting in March 2020 because of the COVID-19 pandemic.

[2] We do not decide whether Washington's complaint states a free exercise claim because we conclude that the law governing any such claim was not clearly established, so Defendants are entitled to qualified immunity on that claim.

denial of leave to amend for an abuse of discretion, but we review the question of futility of amendment de novo." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1172 (9th Cir. 2016) (citations omitted). We affirm.[3]

1.　Defendants are entitled to qualified immunity as to Washington's First Amendment free exercise claim.[4] "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To clearly establish the law, a case need not be "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Here, even if Washington's complaint states a claim that Defendants violated his right to free exercise by not enabling his attending Ta'leem study services and

---

[3] We deny as unnecessary Defendants' motion to strike six of the ten documents that Washington filed with his reply brief. Dkt. No. 21. We do not rely on the documents to which Defendants object, which are already reflected in the complaint's allegations that we accept as true.

[4] Washington also alleges that he was "compelled to attend the CMC-East InterFaith Chapel School of the Bible (Christian Services) . . . contrary to his own religious faith and studies" from July 2019 to March 2020. Because Washington's opening brief did not "clearly and distinctly" raise any argument as to whether that particular allegation might give rise to a First Amendment claim, that argument is considered forfeited on appeal. *Avila v. L.A. Police Dep't*, 758 F.3d 1096, 1101 (9th Cir. 2014) (quoting *McKay v. Ingleson*, 558 F.3d 888, 891 n.5 (9th Cir. 2009)).

3

Jumu'ah prayer services every week while the prison was trying to hire a replacement for an imam who had resigned, that right was not "beyond debate." *Id.* Although inmates are entitled to a "reasonable opportunity to freely exercise their faith," *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (quotation marks omitted), no caselaw clearly established at the time of the alleged misconduct that inmates are deprived of a reasonable opportunity to freely exercise their faith when, as alleged here, prison officials facilitated inmates' access to religious services on some occasions and were attempting to obtain the staffing to facilitate more services in a manner that would be consistent with legitimate penological interests. Defendants are therefore entitled to qualified immunity as to Washington's free exercise claim.[5]

2. The complaint fails to state a Fourteenth Amendment equal protection claim. To allege an equal protection violation, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based

---

[5] To the extent that Washington seeks declaratory and injunctive relief, he lacks standing. Washington seeks relief only for injuries occurring in 2019 and 2020, and he does not allege any facts demonstrating that he likely will be wronged again in a similar way or that the threat of repeated injury is real and immediate. *See Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 723 (9th Cir. 2023) (en banc) (discussing the standing requirements for prospective injunctive relief); *see also Sample v. Johnson*, 771 F.2d 1335, 1340 (9th Cir. 1985) (noting that, to establish standing, "plaintiffs must demonstrate that a 'credible threat' exists that they will again be subject to the specific injury for which they seek injunctive or declaratory relief" (quoting *Kolender v. Lawson*, 461 U.S. 352, 355 n.3 (1983))).

4

upon membership in a protected class," as compared to "similarly situated" groups. *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (first quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); and then quoting *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005)). Washington seeks to establish Defendants' discriminatory animus toward Muslims by alleging that "all other Religious Services for the Christians, Jewish Faith, Catholics, Native [A]mericans, etc. . . . were being provided to those Religious Groups on their scheduled days" at the chapel. Even given that Imam Rasheed had "supervise[d] other Religious Services . . . when there were [chaplains] that were on sick leave or just unassigned Chaplain positions," Washington does not allege that these other groups enjoyed uninterrupted religious services throughout the absence of their assigned chaplain. And the facts in the complaint about Defendants' continuation, though intermittent, of Jumu'ah prayer services at the chapel under the supervision of Defendant Gottesfeld during their search for a new imam undermine Washington's conclusory assertions of animus. *See Hartmann*, 707 F.3d at 1124 (holding that evidence of prison officials' providing Plaintiffs with access to a volunteer Wiccan chaplain when one was available belied the claim of animus).

3. The district court did not abuse its discretion by denying Washington leave to amend the complaint. A pro se litigant is not entitled to leave to amend if "it is absolutely clear that the deficiencies of the complaint could not be cured by

amendment." *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995). And leave to amend is warranted only "if deficiencies can be cured with additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) (quoting *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990)). Given Washington's allegations about Defendants' efforts to continue chapel services during the vacancy of the imam position, we conclude that Washington cannot allege any facts consistent with his original complaint that would suffice to plead a clearly established violation of his free exercise rights or state an equal protection claim. The district court did not abuse its discretion in denying leave to amend after concluding the same.

**AFFIRMED.**